LINDSAY GEORGE, Administrator, &c., Plaintiff in Error, v. ANDERSON BEAN et al., Defendants in Error.

1. ADMINISTRATOR'S SALE : WARRANTY.—As a general rule, an administrator warrants neither the title nor soundness of property sold by him; a warranty of soundness cannot be presumed against him.
2. ADMINISTRATOR : FRAUDULENT REPRESENTATIONS BY.—A purchaser, at an administrator's sale, who seeks to avoid payment for the article bought, on the ground of fraudulent representations made by the administrator in relation to its soundness, must not only show that the unsoundness exists, but that he trusted to the representations of the administrator, in making the purchase; and such representations, in the absence of clear proof to the contrary, are presumed to be honest, and not meant to mislead.
3. ADMINISTRATOR : FRAUDULENT CONCEALMENT BY.—An administrator is not guilty of a fraudulent concealment of a defect in property sold by him, unless his conduct in relation to it is such as *necessarily* to conceal such defect.

4. Purchasers at administrator's sale.—It is the policy of the law, that purchasers at administrator's sale, shall rely upon their own judgment, and on information derived from third persons, other than the adminstrator.

5. It seems, that if an administrator practise a fraud upon a purchaser, at his sale, the rightful remedy is by action against the administrator, in his private capacity, and not by defence to the action for the purchase-money.

In error from the Circuit Court of Chickasaw county. Hon. William L. Harris, judge.

The plaintiff in error sued the defendants in error, in the Circuit Court of Chickasaw county, upon a promissory note for $1570, given by the defendants to secure the purchase-money of two slaves, sold by the plaintiff in error, as administrator of Spencer George, deceased. The defendants filed two pleas in bar of a portion of the action, one setting up fraudulent representations made by the administrator, in relation to the soundness of one of the slaves: and the other relying upon a fraudulent concealment by the administrator, of said unsoundness. The plaintiff in error demurred to these pleas, and the demurrer was overruled. Issue was then taken on the pleas, and a trial had, which resulted in a verdict for plaintiff, for $1145; the jury allowing the defendants $435, for the unsoundness of the slave Mary.

The defendants in error proved by Mrs. Davis, that she knew Mary for several years previous to, and during the year 1853; that a part of that time she was hired to her; that whilst she was hired to her, Mary complained of debility, and had not strength to lift "heavy vessels;" complained of being overcome by heat, when cooking, but could not say whether she was sound or not— that she was of a delicate frame, but large enough to do house work.

Mrs. Wright, for defendants, testified that she knew Mary whilst hired to Mrs. Davis; that her health was then delicate; that she complained of a pain in her head and side every day; that she was hired out for several years previous to the sale, and kept but very little about plaintiff's house.

L. D. Leedy, for defendants, testified that the note sued on was given for the girl, Mary, and a boy, Charley; that the price of Mary was over $800; that he acted as auctioneer at said sale, and

George *v*. Bean et al.

that no notice or intimation was given of Mary's unsoundness; that nothing was said on this subject; that for eighteen months before the sale, plaintiff had charge of the negro Mary, as agent for his brother; but that he kept her hired out, in the same town in which he resided, and might have seen her every week.

Dr. Murdock, for defendants, stated that he is a physician, and was called to see Mary in May, 1853, and found her affected with some disease of the womb; thought it was chronic inflammation; that the disease was a curable one, but he did not think that Mary could be cured; his opinion was, that the disease existed prior to March, 1853, but of this he was not certain; that from various causes it might have originated suddenly, and within a month, or perhaps, less time, before his examination. He thought her value reduced one half by the disease.

A. C. Baskin, for defence, stated he was son in law of Bean; resided in his house in 1854; that Mary was several times sick, and confined at each time about a week; she was one of the house girls and seamstresses of Bean—he having two; that she attended in the house—assisted generally in cooking breakfast. She did washing once, but became sick shortly after; he thought her value reduced one half; he knew of no offer on the part of Bean, to return said slave.

Plaintiff offered to prove by the last witness, that his attorney had offered to take the negroes back and give up the note, if Bean would pay reasonable hire, and that Bean at first assented to this and afterwards declined; but the court refused to permit the witness to state those facts, and plaintiff excepted.

The plaintiff then proved by John B. Davis, that he had said negro Mary in his possession from January, 1853, to March, 1853, the date of the sale; that she complained once of being sick from over-work; that he did not know of her having any disease, and that he had known her for two or three years prior to the sale, and her reputation was that of a valuable servant; that Bean had applied to him previous to the sale, for information in relation to the negro Mary, and that he had informed Bean that he thought she was sound, but a delicate woman, and could not stand exposure or heavy work.

Mrs. Godleed, for plaintiff, stated that she knew Mary; that she had been hired to her in 1852 about six months; that during that time she was sound, and never complained of being sick; that she worked all the time regularly, and was a valuable servant.

Mrs. Oldshoe, for plaintiff, stated, that during the latter part of the year 1852, she had Mary in her employ for several months; that she discharged her duties well all the time, from the day of her arrival until she left; that she never heard of her being sick or unhealthy, and that Mary was the most valuable servant she ever saw.

This was all the evidence.

Several instructions were asked for and given, but it is unnecessary to state them.

A motion was made for a new trial, by plaintiff, but overruled, and a bill of exceptions taken to the refusal of the court to grant the new trial.

*Sale* and *Phelan*, for plaintiff in error, filed a written argument reviewing the testimony.

*Featherston* and *Orr, contrà,*

Commented on the testimony, and cited the following authoties: 2 Stark. Ev. 21, 22; 1 Phil. Ev. 108, 109; 5 How. 495; 7 Ib. 328; 1 S. & M. 169; 12 Ib. 669; 3 How. 219; 4 Ib. 338; 7 Ib. 340; 1 S. & M. 381; 10 Ib. 313; 5 Ib. 21; 12 Ib. 608, 615; 13 Ib. 599.

FISHER, J., delivered the opinion of the court.

This was an action brought in the Circuit Court of Chickasaw county, upon a promissory note, given by the defendants to the plaintiff for the sum of $1500, to secure the purchase-money of two slaves sold at public sale by the plaintiff as administrator, and purchased by one of the defendants.

The defence set up was, that the plaintiff fraudulently concealed the fact, that one of the slaves was unsound. The proof on this subject, if we have been able to understand the record, which, like most of the records from that county, is almost unintelligible,

George *v.* Bean et al.

amounts to nothing. There is no proof of either fraudulent representation or fraudulent concealment of any fact which could affect the validity of the sale. As a general rule, an administrator warrants neither the title nor soundness of the article he sells. There is, perhaps, in such case an implied warranty, which would bind the estate as to the title of the property, but there is no warranty of soundness, and none can be presumed against the party, as there is no benefit accruing to him under under such contract; and the same may be said as to a charge of fraud. He has no motive to make false representations, and we must presume, in the absence of clear proof on this point, that if they were made at all, they were honest, and not intended to mislead. But the purchaser must not only show that the representation was made, but that he trusted to it in making the purchase.

The same may be said in substance with respect to a fraudulent concealment. The purchaser must show that the slave was not only diseased at the time of the sale, so as greatly to impair her value, but that the conduct of the administrator was such as necessarily to conceal this fact. It is the policy of the law, that persons purchasing property at administrator's sales, should trust either to their own judgment, or such information as they may derive from sources other than the administrator, in making the purchase. An account of the sale is returned to the Probate Court, and he must settle with the distributees according to the record thus made, unless he can show that the debt without any fault of his has been lost. Such a defence, if successful in the Circuit Court, opens the door for litigation between the distributees and the administrator in the Probate Court, which litigation, independent of the delay occasioned in the distribution of the estate, or in the satisfaction of the demands of creditors, is attended with expense and trouble to all parties concerned.

If the fraud has in truth been practised by the administrator, and the purchaser deceived thereby, he ought in this class of cases, to be driven to his action directly against the administrator, so that innocent parties who are interested in a speedy settlement of the estate, will not be delayed by the fraudulent conduct of the administrator. If a recovery should in such case be had against him,

he will not have any recourse upon the estate for reimbursement on account of his fraud; and consequently no excuse for delaying payment of the demands of creditors, or for not making distribution, as the case may be.

Under any view which we have been able to take of the case, we think the court below erred in refusing to grant the new trial.

Judgment reversed, and new trial granted.