## DUNBAR *v.* HIS CREDITORS.

A sale of community property surrendered by a surviving husband to his creditors, made by order of court without the advice of a family-meeting, is irregular, so far as the minor heirs of the wife are concerned; but as this irregularity may be cured, and the sale be rati-

fied under art. 1788 of the Civil Code, by afterwards obtaining the ratification of the sale by a family-meeting, the court may make a ratification of the sale by the heirs the condition of allowing them relief on other points.

APPEAL from the District Court of West Feliciana, *Boyle*, J. *Paterson*, *Ratliff* and *Morgan*, for the appellants. *Bowman* and *Lyons*, for other opponents. No counsel appeared for the other parties.

The judgment of the court was pronounced by

ROST, J.[*] The children of the insolvent, *Ananias Dunbar*, have appealed from a judgment ordering the syndics to place them on the tableau of distribution for the sum of $13,140 31, and interest, to be paid by preference over all other mortgages, this amount being, in the opinion of the court, the nett proceeds of one half of the property of the community at the time of their mother's death, and to which they are entitled as her heirs. The appellees ask that the judgment be amended in their favor.

Before entering into an examination of the case, it is necessary to state that, nearly all the property surrendered by the insolvent was community property, and that it was sold by the syndics without making the appellants parties to the proceedings. After the surrender, the under tutor of the appellants was duly authorised, on the advice of a family-meeting, to institute, and did accordingly institute, legal proceedings to recover, on behalf of the minors, the undivided half of the community property. On an exception taken by the syndics to this proceeding, the action was cumulated with the *concurso*. The syndics subsequently filed their tableau of distribution, and the minors filed their opposition, setting out their claims, and praying that, "they be decreed to have a superior mortgage on all the real estate and slaves of the community, and that they be placed on the tableau filed by the syndics, to be paid out of the proceeds of the sale of the land and slaves made by the said syndics, by preference to all other creditors of the insolvent."

The record in this case being very voluminous, and the ascertainment of the state of the accounts between the insolvent and the community having been rendered intricate and difficult, in consequence of the destruction of the books of the insolvent by fire, the court, for the furtherance of public business, and with the consent of counsel, referred it to experts, so far as it involves the settlement of the affairs of the community. The experts appointed have conscientiously discharged their duty, and made a report, according to which the sum due the minors would appear to be $8004 93½, reserving their claims to certain property of the community, alienated by their father after its dissolution and before his failure. The appellants have opposed this report on various grounds, which we will proceed to notice.

I. It is alleged that the experts erred, in placing on the account the debts due to *Johnson* and *Tingley*, and to several others whose names are mentioned in the statement marked B, annexed to their report, on the ground that not one of those claims was either placed on the bilan by the insolvent, or on the tableau of distribution by the syndics; that these parties have never presented their claims to the syndics for allowance; that such of the claims as fell due in 1834 and 1835, were prescribed against prior to the surrender made by the insolvent, and are all now barred by prescription.

We do not think there is error in this. The existence of the debts, at the

_____

[*] EUSTIS. C. J., absent.

time of the dissolution of the community in 1833, is proved beyond all doubt. It is shown that the insolvent had, at that time, large means under his control, and that he was prompt in the payment of debts due by him, until serious losses and the general derangement of the monetary affairs of the country, compelled him to make a surrender of his property to his creditors, in May, 1840. His schedule contains a detailed account of his indebtedness, and he stated under oath that it was in that respect faithful and correct. None of the claims opposed are found in the schedule, and those who hold them, among whom is the Canal and Banking Company, have never presented them to the syndics. Were the books of the insolvent in existence, we are are satisfied that they would show that those claims had been paid, and as they are not in existence the evidence adduced makes out a *prima facie* case of payment. We cannot go upon the presumption that the Canal and Banking Company, and the other creditors, have abandoned their claims; *nemo facile presumitur donare.* They must be considered as paid, and no provision is to be made for them in the tableau of distribution.

II. As to the debt due the estate of *Linton*: It existed at the dissolution of the community, and whether or not it has since been novated is immaterial. Whether novated or paid by *Dunbar*, the community is to be charged with the amount due *Linton* at its dissolution. That amount is proved by the account of *Linton*, and the testimony of *Wm. E. Thompson*. The judgment obtained by *Mrs. Linton*, as administratrix of her husband's estate, on mortgage notes, includes the sum of $6661 13, this sum being the first item of the account rendered a few days before the death of *Mrs. Dunbar*.

III. The appellants complain that the sum of $3400, charged as expenses of the plantation for the year 1833, is much too large, and should be reduced to $2000. There is very little evidence in the record to guide us in relation to this item. Considering the number of slaves engaged on the plantation and the crop made, we are disposed to think the sum allowed for expenses as rather too high, and we will reduce it to $2700.

IV, V, VI. There is nothing in the fourth and fifth objections. But the sixth appears to be well founded, as to the manner in which the interest is calculated in the report. It would have been more regular to have charge the three several sums paid by *Dunbar* as interest, at the time he paid the instalments, and to add to this the instalments paid, the interest thereon, and the balance due on the 6th May, 1837, to wit; $5,312 50, with interest from that date. This mode of calculating interest makes a difference of $234 32, in favor of the appellants. There is also an error in the calculation of interest on the *Linton* debt, instead of $2,432 60, it should be $2,220 46. The difference of $212 14 must be allowed to the appellants.

These changes in the report of the experts will make the claim of the minors amount to the sum of $9,151 39½, without prejudice to their rights in the property of the community alienated by their father after its dissolution. Those alienations cannot be made valid, so far as they embrace the rights of the minors; the property which they convey has never come into the hands of the syndics, and the claims of the minors in relation to it cannot be settled in the *concurso.*

The property surrendered was sold at public auction, and the sale of that portion of it which belonged to the community not having been made by the order of the judge rendered on the advice of a family meeting, was irregular, so far

DUNBAR
v.
CREDITORS.

as the minors are concerned. But under the spirit of art. 1788 of the Civil Code, the irregularity may be cured, and the sale ratified, by resorting now to a similar proceeding; and for the preservation of the rights of the purchasers, we will require this ratification before the appellants are authorised to receive the sum allowed them by this decree.

It is, therefore, ordered that the judgment of the court below be amended : That the appellants be placed on the tableau of distribution for the sum of $9,151 39½, with legal interest from the 21st December, 1844, till paid, without prejudice to their rights in the property of the community which existed between their mother and the insolvent, alienated by the latter after her death, and before his failure : That the judgment as amended be affirmed; and that the sum allowed the appellants be paid to them by preference over all other mortgage or ordinary claims, on their producing to the syndics a decree of court, rendered on the advice of a family meeting, ratifying and confirming the sale of the community property made by the syndics, as authorised by art. 1788 of the Civil Code. It is further ordered, that the costs of this appeal be paid by the appellants.