VALLÉ'S HEIRS, Respondents, v. FLEMING'S HEIRS, Appellants.

1. Where land is purchased in good faith at an administrator's sale, which is void because the requirements of the statute are not pursued, and the purchase money is applied in extinguishment of a mortgage to which such land was subject in the hands of the owner, the purchaser will be subrogated to the rights of the mortgagee to the extent of the purchase money applied in the extinguishment of the mortgage, and the owner will not be entitled to recover possession until he repays such purchase money.

*Appeal from Madison Circuit Court.*

This was an action in the nature of ejectment. The plaintiffs, who are six of the seven heirs of C. C. Vallé, deceased, claim six-sevenths of one-third less three fifty-sixths of the Mine La Motte tract, containing about 24,000 acres. The case has heretofore been in the supreme court, whose decision is reported in 19 Mo. 454. The cause being remanded, the defendants, the heirs of Thomas Fleming, filed an amended answer. In this answer the defendants set up, as a bar to the recovery of one-half the land sought to be recovered, a deed executed in 1848 by the administrators of said C. C. Vallé in favor of said Thomas Fleming. The validity of this deed was affirmed by this court in the case of Vallé v. Fleming, 19 Mo. 454. The answer then proceeded to set forth, as to the remaining half of the interest claimed by the plaintiffs, that in 1838, said C. C. Vallé, ancestor of plaintiffs, died greatly indebted; that he died seized of the undivided third part of the Mine La Motte tract, subject to an unsatisfied mortgage executed thereupon November 6, 1837, to secure the payment of $67,050; that after the death of said Vallé, the administrators of his estate applied to the county court for an order of sale in order to pay off debts and encumbrances, and particularly the debt secured by said mortgage; that the county court made an order of sale; that the administrators accordingly sold one-half of the interest of said Vallé in said tract to Lemuel Lamb, Elihu Chauncey and

Thomas Fleming; and executed deeds* conveying to said Lamb, Chauncey and Fleming said one-half of said one-third part of said tract for the sum or price of $50,000; that said sum of $50,000 was applied to and was paid for the exoneration and discharge of the estate of the said Vallé from the lien of the mortgage; that the purchase was made in good faith for full value; that said sum of $50,000 was paid in satisfaction of the mortgage, and the residue of said sum of purchase money so bid by said persons at said sale by the administrators was paid to and received by said administrators; that if said sale and conveyance be not sufficient, by reason of any technical informality or defect, to vest the title in said purchasers, then defendants insist that the money paid to the administrators of Vallé and toward the satisfaction of the mortgage was the money of said Lamb, Chauncey and Fleming advanced by them at the instance of said administrators towards paying off the debts of said Vallé and toward the extinguishment and satisfaction of liens on his estate; the said Lamb, Chauncey and Fleming and the said administrators acting in perfect good faith, and all persons supposing and intending that said Lamb, Chauncey and Fleming should and would acquire a perfect title to said land. The answer then proceeds as follows: ["And the said defendants say that, notwithstanding the apparent and technical payment and extinguishment of said mortgage in manner and form aforesaid, equity will, under the circumstances above shown, treat the said mortgage as still subsisting and unsatisfied for the protection of the said Lamb, Chauncey and Fleming, and will subrogate them, the said Lamb, Chauncey and Fleming, to all the rights of the mortgagees therein, treating them, the said Lamb, Chauncey and Fleming, as assignees and purchasers of said mortgage for valuable consideration of them had and received. And defendants say that said Thos. Fleming, in his lifetime, purchased and acquired, for valuable consideration, all the interest, estate and property of the

---

* These are the deeds decided to be void and null by the supreme court when the case was on appeal before. See Vallé v. Fleming, 19 Mo. 454.

said Lamb and Chauncey in and to the said tract of land supposed to be conveyed as aforesaid by the said administrators of said C. C. Vallé to the said Lamb and Chauncey; and that he is the assignee for value of all the interest, claim and demand which the said Lamb and Chauncey had to the said sum of money paid and advanced as aforesaid by said Lamb and Chauncey toward the extinguishment of said mortgage. And these defendants are the legal representatives of the said Thomas Fleming, who has died since the institution of this suit; and so these defendants are entitled to be substituted and subrogated to all the rights and privileges which the said mortgagees would enjoy if said mortgage were unpaid, and the said mortgagees were in possession under the same. And defendants say that they are in fact and in equity in possession of said tract of land as assignees of said mortgagees, and entitled to set up the same against any person and all persons impugning their title and possession thereto. And defendants are ready to account for the rents and profits of said land so mortgaged to the said commissioners in plaintiffs' petition mentioned, and to come to a reckoning with the said plaintiffs—charging them, said plaintiffs, with the interest of the said mortgage debt so paid as aforesaid. But defendants charge that the said plaintiffs have, at no time either before or since the institution of this suit, offered to pay off or discharge whatever may be due to said defendants on account of said mortgage. And defendants are ready to verify all the premises as this court may direct and appoint; and they pray that an account may be taken by and under the direction of this court of what is due to those defendants for principal and interest on the said mortgage debt; and that plaintiffs be decreed to pay the said defendants what shall so appear to be due on the taking of said account, together with the costs of this suit, on or before a day to be for that purpose by the court indicated and appointed; and, in default of such payment, that the plaintiffs be foreclosed and forever barred of and from all right and equity of redemption of, in and to the said mortgaged premises and every

part of the same; and also be decreed to deliver and yield up to the defendants all deeds and writings whatsoever, in possession of said plaintiffs, relating to said mortgaged premises; and that the court here will make such further order and decree in the premises as the equity of the case may require."]

The portion of said answer above set forth and enclosed within brackets the court struck out on motion of plaintiffs. The cause was afterwards heard upon its merits and determined in favor of the plaintiffs, the court rendering judgment in their favor for six-sevenths of one-sixth of the Mine La Motte tract, excluding the sixteenth section in two several townships. It is deemed necessary to set forth the facts only so far as they throw light upon the action of the court in striking out a portion of defendant's answer.

*Leonard* and *Gantt*, for appellants.

I. The question is not merely whether the plaintiffs have a legal right to recover the land, but also whether the defendants have any equitable defence against the recovery. If the administrators' sale is valid, that transaction defeats the plaintiffs' supposed legal right; if it is void, yet, having been made in fact and the purchase money having been applied to pay off a mortgage upon the property as well as other debts of the ancestor, equity will not permit the heir to recover the land without first refunding the purchaser what he paid for it. (Dufour v. Camfranc, 11 Mart. 610; Howard v. North, 5 Texas, 302; McLaughlin's adm'r v. Daniel, 8 Dana, 182; Hudgin v. Hudgin's adm'r, 6 Gratt. 320.) *Jure naturæ aequum est, neminem alterius detrimento et injuria fieri locupletiorem.* (Digest Book 50, tit. 17, 206; 1 Kame's Eq. 140, 153-4.) In the present case, the money paid by the purchasers was lost to them through the error that has intervened and goes into the pockets of the heirs, if they are allowed to recover the land without refunding it, and the amount of the gain thus made by the heirs is the precise amount of the debts paid out of the proceeds of the sale,

which otherwise would have exhausted their property to that extent. (See Kyner v. Kyner, 6 Watts, 223 ; 1 Johns. Ch. 412 ; Buchanan v. Clark, 10 Gratt. 178 ; 22 Penn. State, 295 ; Henshaw v. Frier, 1 Bailey, 311 ; Bentley v. Long, 1 Strobh. 50 ; Law v. Huffman, 12 Gratt. 629 ; Gilson v. McCormick, 10 Gill & Jo., 1 Maryl. 66 ; Belchver v. Forney, 29 Penn. 47 ; Guasquet v. Robins, 2 Louis. Ann. 408 ; 11 Gratt. 48 ; Teed v. Caruthers, 2 Young & Coll. 31 ; Barnes v. Camack, 1 Barb. 392; King v. McVickers, 3 Sandf. Ch. 192; McLean v. Lafayette, 3 McLean, 587 ; Heighway v. Pendleton, 15 Ohio, 735 ; 7 Barb. 29 ; Hunt v. Hunt, 14 Pick. 374 ; Peltz v. Clark, 5 Peters, 481.)

II. The deed made by the administrators of Vallé in 1839 is valid.

III. The defendants being the purchasers for value of the claim of the widow of C. C. Vallé to the land in controversy, they are entitled to the benefit of this purchase in an account with the heirs.

*Noell*, for respondents.

I. The sale made to Chauncey, Lamb and Fleming in 1839, so far as C. C. Vallé's interest was concerned, was void. (Vallé v. Fleming, 19 Mo. 454 ; 22 Mo. 310 ; 23 Mo. 342.)

II. The defendants have no right to be substituted or subrogated to the rights of the mortgagees. At the date of the deeds to Lamb, Chauncey and Fleming, the Mine La Motte tract was owned in common by Pratte, Linn and the representatives of Vallé, Pratte owning one-third, Linn one-third, and Vallé's representatives one-third. There were three deeds executed, one to Chauncey, one to Lamb, and one to Fleming. Each deed called for one-sixth ; that is, the three deeds called for one-half of the tract. The deeds of 1839 to Chauncey, Lamb and Fleming did in fact convey to them all the land they bargained and paid for, not indeed out of the share of C. C. Vallé, but out of the shares of Linn and Pratte, who, between them, owned two-thirds, which was

more than sufficient to satisfy and did in fact satisfy the calls of their deeds, these calls only demanding in the aggregate one-half. If the title had failed to any part of the land bargained for, then the defendants, in their amended answers stricken out by the court, made no such case as entitles them to relief. The doctrine of subrogation and substitution can only apply to cases where the party is bound by law to pay a debt for another, which debt is secured to the principal by some lien other than that of the person so bound. The case of Peltz v. Clark, 5 Pet. 481, has no application here. There the sale was a valid sale. In this case the sale is void from the beginning. The claim is raised here to get back money upon a sale wholly void. (See 2 Brock. 254; 3 Ala. 302; Watts & Serg. 356.) Volunteers will not be subrogated. (3 Paige, 117; 1 Sandf. 384; 8 Leigh, 588; 10 Serg. & Raw. 399.)

III. The court did not err in deciding that defendants could claim nothing for the dower of Mrs. Vallé. (McClanahan v. Porter, 10 Mo. 753; 17 Johns. 167.)

NAPTON, Judge, delivered the opinion of the court.

Assuming the deed from Vallé's administrator in 1838 to be void, by reason of the failure of the administrator to comply with the requirements of the statute, as was held by this court when the case was here before, the only question for our determination now is, whether the defence set up in the answer is a valid one in equity.

The maxim of the common law " *nemo debet locupletari ex alterius incommodo*" is one of those general principles of natural equity which receive at once, without examination or discussion, the approbation of every cultivated and well regulated mind. The same maxim, expressed more fully, is found in the civil law : " *Jure naturæ aequum est, neminem cum alterius detrimento et injuria fieri locupletiorem.*" The exact application of this principle, the same essentially in each system, has however been more extensively and more definitely illustrated and enforced in the Roman law than it has

11—VOL. XXIX.

been under the common law and chancery system of English jurisprudence. The limits, within which it will be held applicable under our system of equity jurisprudence, are not so well settled as they seem to be under the Roman law and Spanish law, and under that modification of the civil law which prevails in Scotland.

To what extent this maxim has been practically adopted in the English and American equity law is a question which was very carefully and elaborately considered and discussed by Judge Story in a case very analogous to the present. In the case of Bright v. Boyd, 1 Story, 478, the real estate of a testator was sold by the administrator with the will annexed to pay the debt of the deceased. The property brought its full value, and the purchaser supposed himself to have obtained a good title, and accordingly made large and expensive improvements on the lots. It turned out that the administrator had not complied with the statute, and the sale was held bad and no title passed. The devisee sued in ejectment and recovered upon his legal title, which of course had not been divested by this invalid sale, and the purchaser and occupant brought his bill to compel the devisee, before he should be permitted to take possession under his judgment in ejectment, to pay for the improvements and for money advanced in buying up outstanding claims. Judge Story hesitated. The case was heard in 1841. In 1835, when his Treatise on Equity Jurisprudence was first published, Judge Story had intimated that such cases were beyond the reach of our equity courts, except when the party seeking to recover the estate required and called for aid from a court of equity, or unless there was some fraud; and that, where the party could recover the estate at law, a court of equity could not, unless there was some fraud, relieve the purchaser. (2 Story Eq. § 1238.) Chancellor Walworth, in Putnam v. Ritchie, 6 Paige, 390, had expressed the same opinion, although he admitted that, after a careful examination of English and American authorities, he had found no case where the point had been decided either way. Judge Story,

strongly impressed as he was with the natural equity of the plaintiff's claim, declared himself unwilling to lead the way in making such a precedent as Chancellor Walworth had been unable to find. He examined the Roman law, the Spanish law, and the Scotch law, and in all these systems he found the question left beyond dispute; and after a postponement of the case and a mature deliberation, he came to the conclusion that the plaintiff was entitled to the full value of his improvements. His language in his final opinion is emphatic: "I wish, in coming to this conclusion, to be distinctly understood as affirming and maintaining the broad doctrine, *as a doctrine of equity*, that so far as an innocent purchaser for a valuable consideration-without notice of any infirmity in his title has, by his improvements and meliorations, added to the permanent value of the estate, he is entitled to a full remuneration, and that such increase of value is a lien and charge on the estate, which the absolute owner is bound to discharge before he is to be restored to his original rights in the land. This is the clear result of the Roman law; and it has the most persuasive equity, and, I may add, common sense and common justice, for its foundation." (2 Story R. 607.)

This case of Bright v. Boyd is not, it is true, in all respects the same with the one now under consideration. There is a difference between the two cases, and perhaps an essential one; but the only point of difference there is serves to place the case we have under consideration on less debatable ground. In that case, as in this, the sale and purchase was in good faith on both sides, but turned out to be void by reason of a noncompliance with the provision of the statute law; but, in that case, the occupant was plaintiff in equity, and desired compensation for improvements which he had in good faith made; in this case, the defendant asks for the purchase money, which has become, as it were, incorporated in the land by paying off a lien on it which the true owner was bound to pay. The owner insists on having the land and the money both. Now, by the common law, the maxim

was, " *cujus est solum, ejus est usque ad cœlum*," and there was at least·some plausibility, though no substantial equity, in the claim of the owner to the improvements as well as the land. It might have been urged that the true owner, if ignorant of his title and not aware of the improvements which the actual occupant was putting on the land, ought not to pay for improvements which he had not directly or indirectly authorized, and which might not at all suit his wants or his fancy. But such an argument could not be used in the case now before us. The purchase money has gone to extinguish a mortgage which the owner was bound to extinguish before he could get the land. It was not a matter of taste or fancy. The debt was a lien on the land, and that lien could only be removed by paying off the debt. There is no escape from the equity here, unless the plea should avail that defendant was a stranger, a volunteer, one who paid a debt without being asked, and who therefore upon legal principles shall not by such an act of folly be allowed to make himself a creditor of another person's debtor. We will examine this plea presently.

In the case of Bright v. Boyd, Judge Story said : " There is still another broad principle of the Roman law which is applicable to the present case. It is, that where a *bona fide* possessor or purchaser of real estate pays money *to discharge any existing encumbrance or charge upon the estate*, having no notice of any infirmity in his title, he is entitled to be repaid the amount of such payment by the true owner seeking to recover the estate from him. Now in the present case it can not be overlooked that the lands of the testator, now in controversy, were sold for the payment of his just debts, under the authority of law, although the authority was not regularly executed by the administrator in his mode of sale by a noncompliance with one of the prerequisites. It was not therefore, in a just sense, a tortious sale ; and the proceeds thereof paid by the purchaser have gone to discharge the debts of the testator ; and so far, the lands in the hands of the defendant have been relieved from a charge to which they were

liable by law; so that he is now enjoying the lands free from a charge which, in conscience and equity he, and he only, and not the purchaser, ought to bear. *To the extent of the charge from which he has been thus relieved by the purchaser*, it seems to me *that the plaintiff, claiming under the purchaser, is entitled to reimbursement, in order to avoid a circuity of action to get back the money from the administrator*, and thus subject the lands to a new sale, or at least in equity to the old charge. I confess myself to be unwilling to resort to such a circuity in order to do justice, where, upon the principle of equity, the merits of the case can be reached by affecting the lands directly with a charge to which they are, *ex æquo et bono*, in the hands of the present defendant, clearly liable."

I have transcribed this strong and decided view of Judge Story in the case of Bright v. Boyd, because, meeting in every respect the question we have to decide here, and applying *mutatis mutandis* to the precise facts of the case, we shall at least be relieved from any imputation of rashness or innovation if we follow the precedent made by so distinguished a jurist. And now Judge Story's doctrine, in Bright v. Boyd, has been made statute law in Missouri, whatever doubts may have existed hitherto of its right to a place among the principles of equity law. (R. C. 1855, p. 694.)

But the principle, apart from its undoubted and undeniable prevalence in the civil law and the codes which have grown out of this system of jurisprudence throughout continental Europe, does not, as an established principle of American equity law, rest upon the single authority of Judge Story. In Hudgins v. Hudgins' executor, 6 Gratton, 320, the court of appeals of Virginia applied the same principle to a case essentially like the present. In that case, there had been a proceeding against an executor to subject the land of his testator to the payment of a debt, and a decree was made for a sale of the land, and commissioners were appointed to make the sale and convey the land. The title acquired under the sale of the commissioners was held

to be void against the devisees under the will, but, as the purchase money had been applied to the payment of the testator's debts, which by the will were a lien on the land, the court would not permit the devisees to disaffirm the sale without paying back the purchase money. The equity in this case was administered by substituting the purchaser to the rights of the creditors.

It is immaterial under what form the equity in such cases is administered; whether under the name of compensation, as it was done in the case of Bright v. Boyd; or under the name of substitution, as in the case of Hudgins v. Hudgins; or, as it is sometimes more conveniently effected, by reviving the encumbrance, which the purchase money has extinguished, and permitting it to be used as a shield against a recovery at law. (Peltz v. Clark, 5 Peters, 482.)

In the case of Howard v. North, 5 Texas, 315, the principle was applied to sheriff's sales. There the sale and deed were held totally void, but the court would not allow the debtor or defendant in the execution to get back the land from the purchaser at the void sale without reimbursing him for the amount paid as purchase money, and which went to discharge the judgment which was a lien on the land. The doctrine of substitution was resorted to by the court to effect the object in view here, but the amount of it was that the purchaser was not compelled to restore the property until equity was done to him. This principle, thus applied to sheriff's sales, is recognized and acted on in Kentucky in numerous cases, and is there applied, not only to cases where the conveyance is ineffective, but to cases where the title of the defendant in the execution fails. The case of McLaughlin's Adm'r v. Daniel, 8 Dana, 182, is a case of this kind. The courts of Kentucky and South Carolina (Bently v. Long, 1 Stroth. Eq. 43) will give a purchaser at sheriff's sale, who loses his property by paramount title, a redress against the defendant in the execution for the amount paid on his purchase, which has gone to discharge the defendant's debts, by substituting him in the place of the creditor. In

our state, where the doctrine of *caveat emptor* has been maintained with strictness in its application to judicial sales, it may be that the courts would not be at liberty to go to the extent of the Kentucky and South Carolina cases, though recent legislation here, as well as recent decisions of this court, show a tendency to the same equitable doctrines. (R. C. 1855, p. 967; Magwire v. Marks, 28 Mo. 196; Heath v. Daggett, 21 Mo. 69.) In these cases of failure of title in the defendant in the execution and consequent failure of title in the purchaser at the sheriff's sale, the Kentucky courts base the equitable rights of the purchaser, not upon his knowledge or ignorance of the condition of the title, but upon the ground that the purchaser has discharged a judgment against the estate or debtor, for which the one or the other stood chargeable, by a purchase of property made under the process of the law, and therefore has the equitable right to be reimbursed out of the estate or property of the debtor. The purchaser, in such cases, might be called a volunteer or a stranger with as much propriety as the purchaser here could be, for he gets no title, either because the execution debtor has none, or because the process used to transfer it was illegal and void. The case of Peltz and others v. Clark, 5 Peters, 482, although unlike the present in the essential particular that the sale in that case was a valid one, shows that a purchaser, under the circumstances of this case, could hardly be regarded as a volunteer, so as to exclude him from the right of substitution, or the right to use a mortgage, which his money had satisfied, as a protection *pro tanto* against the ejectment.

In Louisiana, the courts have not hesitated, but disposed of this question as one too plain for argument under the laws of that state. In Dufour v. Campane, 11 Martin, 615, there was an irregular sale, just as there was in this case, and the title of the purchaser failed, not by reason of any want of title in the person from whom he supposed himself to be buying, but because of some informality in the conveyance or the proceedings which led to it. The court say,

in a few words : " Nothing could be more unjust than to permit a debtor to recover back his property because the sale was irregular, and yet allow him to profit by that irregular sale to discharge his debts."

This is all indeed which could be or need be said upon the subject. " Nothing could be more unjust," we may repeat, than to permit a person to sell a tract of land and take the purchase money, and then, because the sale happens to be informal and void, to allow him, or, which is the same thing, his heir, to recover back the land and keep the money. Any code of law which would tolerate this would seem to be liable to the reproach of being a very imperfect or a very inequitable one. We think that, upon well established principles of equity law, the owner of the land should, if he wishes to get it back, repay the purchase money, which he has received, or which he will receive if he gets the land. This may be done upon the compensation doctrine of courts of equity, with which, as it is settled on all hands, it is not inconsistent, if we regard the claim of the owner under such circumstances, as the Roman law treated it, as a case of fraud or ill-faith. But whether this equity be administered under the name of compensation or by substituting the purchaser in the place of the creditors whose debts he has paid, or by giving him the benefit of the mortgage which his money has paid off, is not material. The answer put in by the defendant should not have been stricken out, and, in order that the answer may be reinstated and the case may be tried upon these equitable principles, the judgment is reversed and the case will be remanded. Judge Ewing concurs.

Scott, Judge, dissenting. This was an action of ejectment brought by the heirs of C. C. Vallé against the defendants to recover the possession of land of which their ancestor died seized. The land in controversy was sold, by the administration of Vallé's estate, under a proceeding for the sale of real estate for the payment of debts. The land was mortgaged for the security of the debt for the payment of which it was

sold.   The defendants became the purchasers of the land for a large sum, but on account of the irregularity of the proceedings had for the sale of it, no title passed to them by the deed of the administration.   In this suit against the defendants to recover possession of the land, they set up these facts in an answer, and pray that they may be subrogated to the rights of the creditor for whose benefit the proceedings were taken to have the land sold, and whose debt was satisfied with the money paid by them.

I am not aware of any principle on which the defence set up by the defendants can be sustained.   Cases similar to that under consideration have frequently occurred.   If relief such as is sought here had been warranted by law instances of it would have been numerous, as we must be satisfied from our observation that like cases are of frequent occurrence.   The magnitude of the sum involved may startle, but it can not affect the law.   The distinction between powers and trusts or estates is a broad one.   The administrator by our law is vested with no title to the land of his intestate.   On his death it descends to his heirs.   The administrator has nothing but a power ; and, if he would affect the land, that power must be executed in pursuance to the terms of the statute by which it is conferred.   There is no difference between this case and that of a sale by a sheriff. If a sheriff's deed proves invalid or ineffectual to convey a title, I know no instance in which a purchaser under it has been relieved.   But how far is this new equity to be carried ? The cases cited would lead us to grant it on a failure of title to property purchased at a sheriff's sale.   Is it to be granted when there is no title by reason of irregularities in the proceedings to condemn the land, or to a defect in the instrument of conveyance, and to a failure of title to property purchased at a sheriff's or administrator's sale ?   The sanctioning of this defence may work changes in our system which no one can foresee.   Certainly it will be the means of giving relief in a great many cases, in which it has been the sense of the profession that no relief was afforded by the

law.  Not that they were insensible to the hardship of particular cases, but because they knew that the hardship of particular cases was compensated by the advantages resulting from fixed general principles.  No man is wiser than the law ; and miserable is that system of jurisprudence under which the rights of litigants depend on the notions of right or wrong entertained by any man or set of men.  In the old books there is a great deal of learning, and many cases in which the question was involved whether a devise to an executor for the payment of debts was an estate in the land or a mere power to sell.  If this doctrine of subrogation had any application in cases of a mere power to sell, how useless would have been much of that learning.  If the purchaser under the power was subrogated to the rights of the creditors the motive to litigation in many cases would have been taken away, and the distinction between powers and trusts would have been measurably broken down.

The defendants are volunteers and strangers in relation to the plaintiffs.  No man can make another his debtor without his consent.  Nor can a man pay a debt of another without his authority and claim it of him.  This is an important principle necessary to be preserved, and it is one which has had its influence in all cases in which it has been involved. In my opinion, the judgment ought to be affirmed.