STONE & NICHOLSON v. HEIRS OF RICHMOND CRAWFORD.

(Case No. 3425.)

1. LAND — VOID EXECUTOR'S SALE — PURCHASER SUBROGATED TO RIGHTS OF CREDITORS.— An executor under a will, which did not give him power to sell, sold land to pay debts against the estate without obtaining an order of sale from the probate court.   In a suit by the heirs to recover the land on the ground that the sale was void, the purchaser or his vendee, the purchase money having been used to pay debts of the ancestor, is entitled to be subrogated to the rights of the creditors, and to retain possession of the land until his money and interest is repaid to him.   48 Tex., 257; 5 Tex., 291; 9 Tex., 313; 13 Tex., 118; 21 Tex., 288; id., 774; 19 Tex., 205; 38 Tex., 219; 29 Mo., 152; 1 Dev. & Bat. Eq., 427; 29 Wis., 182; 8 Grattan, 320; 11 Martin, 607; 40 Wis., 66.

APPEAL from Washington.   Tried below before the Hon. E. B. Turner.

The opinion of the court states the facts.

*Giddings & Morris,* for appellants.

*Sayles & Bassett,* for appellees.

WALKER, P. J.— This was a suit brought by Lila Crawford and others, as heirs at law of Richmond Crawford, deceased, to recover an undivided half of a tract of land containing five hundred and fifty-three acres, against Warren Stone and L. M. Nicholson.   Plea, " not guilty," and a suggestion of purchase in good faith and the making of

valuable improvements, and also that the debts of the estate exceeded the assets of the estate, and that all the means, assets and property of the estate were exhausted by the executors and appropriated to the payment of the debts of the estate.

The plaintiffs claim the land in controversy as the heirs at law of Richmond Crawford, who died in September, 1856, and it is admitted, in the agreed case before us, that, upon the facts in evidence, there is no error in the judgment of the court rendered in favor of the plaintiffs, " unless the title to the land in controversy was divested out of said plaintiffs, and plaintiffs are estopped from recovery of the same by reason of the following facts proven on the trial."

The facts referred to are, in substance, that Richmond Crawford purchased the land in July, 1853, for the sum of $7,059, payable in three instalments, he receiving from his vendor a bond for title stipulating for a conveyance upon the payment of the purchase money. At his death one instalment of the purchase money was due and unpaid. He had occupied with his family and cultivated the land from the date of his purchase until his death. By his will, which was duly admitted to probate by the county court of Washington county, he appointed W. C. Degges, his wife, Mary Crawford, and his brother, Menton Crawford, his executors; directed them to collect debts due him, to pay the debts due from him, and perfect the title to his land (referring to the land in controversy), and upon final settlement deliver his estate to his legal heirs. Degges and Mary Crawford qualified as executors in the county court of Washington county, taking possession of his real and personal estate, the latter consisting of negroes, mules, cattle, cotton and corn.

On the 8th of April, 1857, the executors paid the last instalment of the purchase money, and received from the vendor a deed conveying the land in controversy to themselves as executors of Richmond Crawford and to the heirs of said Crawford.

On the 20th of June, 1859, Degges, as executor of said Richmond Crawford, conveyed the land in controversy to

J. G. Hunt by deed reciting the payment of a consideration of $10,860, which was the full value of the land.  On the same day Mary Crawford, reciting a consideration of $10,860, "this day paid by said Hunt to W. C. Degges, as executor of her deceased husband, Richmond Crawford," conveyed by quitclaim deed all her right, title and interest in said land to said Hunt.  That the defendants are in possession of the land under conveyance, with warranty from Hunt, in good faith, for a valuable consideration of money equal to the full value of the land paid by them to their vendors.

No application for the sale of the land in controversy to the county court in which the administration was pending was ever made by the executors, nor did said court ever make an order for the sale of the same, but the land was sold at private sale by the executor, Degges, to J. G. Hunt, Mary Crawford on the same day quitclaiming her interest in the land to Hunt, as has been already stated, and there is no provision in the will taking the estate out of court for the purpose of administration, or authorizing the sale of his property by his executors without an order of court.

On the 23d of June, 1859, Degges filed his petition in the county court, stating that he had sold and conveyed the land to J. G. Hunt for the price of $10,860, and that he was authorized by the will of Richmond Crawford to dispose of the land as to him, said executor, might seem best; that the sale was an advantageous one to the estate, which was then largely indebted; that by said sale the estate will be relieved from debt; and prayed for a decree of confirmation of the sale which had been thus made.

At the succeeding July term of the court there was rendered a formal decree or order confirming the sale, ordering the return of sale to be recorded, and decreeing that all the right, title, interest and claim in and to said tract of land be divested out of said estate and vested in said J. G. Hunt.

It is admitted that all the property of the estate, inclusive of the land, was duly inventoried, appraised and approved by the court.

On final settlement of the account of the executor, Degges,

which was filed in March, 1870, it appeared that all the property and assets of the estate had been accounted for, and from the sale thereof there had been realized $16,735.79. That the sum of $17,760 had been paid out on established claims against the estate, for which vouchers were produced, and that the debts due by the estate exceeded by $2,328.50 the assets of the estate. That the final account was duly approved by the probate court, the estate closed and the executor fully discharged prior to the filing of this suit on the 28th day of July, 1874. It is admitted that the estate was insolvent; that all the property was the community property of the deceased and his wife, Mary Crawford, and was subject to administration, and that the debts which were paid were the debts of the community estate. A jury was waived and the cause submitted to the court. Judgment for the plaintiffs as prayed for in petition, and decree for partition on the basis of allowing the defendants the benefit of improvements made by them, and judgment also against the immediate warrantors of title to defendants on their covenants of warranty, etc. The defendants appeal, and assign as error that the judgment is contrary to the evidence; that, upon the whole case, the court should have rendered judgment for the defendants.

The judgment complained of was evidently based upon the proposition that the want of an order of the probate court authorizing the executors of the will to sell the land was fatal to the validity of the title which they conveyed to Hunt, and that the heirs of Crawford were not divested thereby of the title to the land cast upon them by inheritance; that this cause of invalidity rendered the conveyance to Hunt absolutely null and void, and was not cured by the ratification and approval of the sale formally made by the probate court, and which also decreed the divestiture of Crawford's estate of the title to the land, and investing the same in Hunt.

Under the view which we have taken of this case, we need not, nor will we, discuss the question as to whether, upon the facts disclosed by the record, Hunt acquired a valid

title, or at all events one valid as against its impeachment in a collateral proceeding. We will remark, however, that it admits, at least, of question, whether, under the facts of the case, the action of the probate court taken upon the petition of the executor for the approval and confirmation of the sale, was not such a judicial determination upon and construction of the powers conferred by the will upon the executors in respect to their right to sell the land without an order of court, as to render the adjudication thus made final and conclusive as to all the world, so far as a mere collateral impeachment thereof is concerned.

Article 1324, Pasch. Dig., provides that "whenever, in a will, power is given to an executor to sell any property of the testator, no order of the chief justice shall be necessary to authorize the executor to make such sale; and when any particular directions are given by a testator in his will, respecting the sale of any property belonging to his estate, the same shall be followed, unless creditors or heirs may thereby be prejudiced in their rights." The petition for confirmation of the sale distinctly asserted the existence in the executor under the will of such a power, viz., "to dispose of the land as to him might seem best."

The ordinary power, authority and duty to order sales of property of an estate is vested in the court; and as has been shown, such power may, by the will, be withdrawn; whether it shall or not be exercised by the court must depend upon the construction of the will. The determination of the question involves that of the court's jurisdiction over the subject-matter of sales of property; the power of the court to order a sale; and the question is a legal one, which it would seem must be incidental to, and necessarily arising for determination by the court whenever the necessity for a sale of property shall arise. The question was presented in the manner as has been stated, resulting in the recognition and approval of the sale; and the order made by the court, by implication, at least, affirmed the construction placed by the executor upon his power to sell the land under the authority given to him by the will.

The probate court possessed jurisdiction exclusively of the administration and settlement of the estate, and if the determination thus made of its authority to sell the land came properly within the exercise of that jurisdiction, and if it did in fact adjudicate, under proper proceedings, the issue in question, it allows, as we have already said, a question to be made whether the judgment rendered in the premises, even though it were erroneous, shall not be deemed conclusive until reversed, set aside or annulled by some direct proceeding for that purpose. If so, it would follow that, for the purposes which affect the title to the land, its invalidity could not attach for want of an order of the chief justice ordering a sale of the land. As before remarked, however, we shall not attempt to dispose of the legal question involved under the view of the facts to which we have referred, but will treat and consider the case as if the supposed invalidity in the title to J. G. Hunt did in fact exist (as, in fact, it may exist), as the same has been argued in the briefs of the counsel.

We are clearly of the opinion, upon the case stated, that the equities which attached in favor of J. G. Hunt, the purchaser from the executor, certainly entitle the defendants to protection in a court of equity, and that the plaintiffs are not entitled to recover the land, except under favor and direction of the broad principle of equitable jurisdiction which operates to prevent a man from enforcing a legal and unconscionable advantage over another who is without fault and has acted in good faith, except by "doing equity" himself, which will not allow him to have an advantage which it is contrary to the principles of equity that he should be permitted to enforce or to retain; for "chancery hath jurisdiction to correct the rigor of the law by the judgment and discretion of equity and grace."

It is not necessary to enter upon a discussion of the rules of law, nor refer to the conflict of decisions in different states, which distinguish against a mere volunteer who purchases at a judicial sale of property, and who, according to some authorities, will not receive protection under the doc-

trine of subrogation; it is sufficient, for the purposes of a proper decision of this case, to show that the transaction, whereby Hunt became the purchaser of the land, was one wherein he occupied a relation which, according to the generally recognized doctrine in this country, he is entitled to protection — that the sale was not tortious; that he purchased in good faith and paid full value; that the sale and its proceeds were applied to the removal of the incumbrance of debts which were a charge upon the land; and that the heirs to the land have received the benefit in the discharge of said debts, and in the perfection of the title to the land, by means of purchase money paid by Hunt.

On the death of Richmond Crawford the debts and obligations of the community became a charge upon the common property which was required to be satisfied; besides, a large instalment was due as purchase money upon the land, and the special lien and charge of the vendor rested upon it, and was required to be paid in order to obtain title thereto. Subject to these charges and incumbrances, the estate of Crawford vested in the heirs. Johnson v. Harrison, 48 Tex., 257.

The sale of the land, therefore, thus made, even though made without legal authority, was nevertheless made in good faith and in the course of the general duty of the executor to preserve the estate, perfect the title to the land, and discharge the debts, and the purchase made being in like good faith, the purchase money which was paid being directed, as it was, to relieve and disincumber the estate of the charges and incumbrances upon it, places the rights of the purchaser on a footing as meritorious, and as much entitled to protection as against the claim of the heirs set up in this suit, as a purchaser at sheriff's sale would be where the sale proved to be invalid, and the purchase money having been applied to the satisfaction of the judgment. In the latter case, it has long been settled in our state that where a sale has been made on an invalid execution, issued on a valid judgment, and the money paid to the satisfaction of the judgment, and there has been no fraud, the purchaser will not be com-

pelled to restore the property purchased, until reimbursed the amount paid by him. Howard *v.* North, 5 Tex., 291; Horan *v.* Wahrenberger, 9 Tex., 313. In the latter case it is strongly intimated that a third person (other than the plaintiff in execution) thus purchasing, even under a judgment which was void, and paying the purchase money in satisfaction of the debt, would have an equity entitling him to relief from the debtor. The same principle announced in Howard *v.* North has been subsequently repeatedly reaffirmed. See Bailey *v.* White, 13 Tex., 118; Andrews *v.* Richardson, 21 Tex., 288. And in the case of Morton *v.* Welborn, 21 Tex., 774, Chief Justice Wheeler said, "and under the decision of this court in the case of Howard *v.* North, *supra*, the plaintiffs cannot recover the property without reimbursing the purchase money paid which went to the satisfaction of the judgment against their ancestor. This is according to the plainest dictates of reason and natural justice; and this they have not done, nor offered to do. They therefore have not shown themselves entitled to recover in this action by averment or proof."

The same principle was again applied in the case of a purchase under a void sheriff's sale. Johnson *v.* Caldwell, 38 Tex., 219. A person seeking to cancel a sheriff's deed as a cloud upon his title must first repay the amount for which the property was sold by the sheriff. Herndon *v.* Rice, 21 Tex., 457; Morton *v.* Welborn, 21 Tex., 773; Brown *v.* Lane, 19 Tex., 205.

The principle thus so long and firmly established by our supreme court in its application to invalid and void sales under execution seems to have, on reason and principle, like adaptation to probate sales; and consistently with this hypothesis or corollary, this view is maintained by Mr. Freeman in his treatise on void judicial sales, which he supports by cases of high authority. He remarks, "nor is the claim to subrogation confined to those cases where a mortgage or some other record lien has been paid off by the sale." (Referring to the case of a void administrator's sale, in which the purchaser was protected under the doctrine under con-

sideration, in the case of Valle v. Fleming's Heirs, 29 Mo.,
152.) "The estates of deceased persons," he proceeds to say,
"are liable to be sold for the payment of the debts of the
decedents, whether such debts are liens or not. If, by a sale
of the lands of a decedent, his debts are paid, and it turns
out that the sale is void, the purchaser has the right to be
subrogated to the claims which he has by his purchase paid;
and he has also the right to retain possession of the property
as security for the repayment of the sums to which he is en-
titled." The author cites and quotes at considerable length,
in support of this doctrine, several well-considered cases of
high authority. Scott v. Dunn, 1 Dev. & Bat. Eq., 427;
Valle v. Fleming's Heirs (supra); Blodgett v. Hitt, 29 Wis.,
182; Hudgin v. Hudgin, 8 Grattan, 320; Dufour v. Cam-
franc, 11 Martin, 607 (2 Cond. La. Rep., 243). The follow-
ing other cases are also cited as being in harmony with the
case of Blodgett v. Hitt (supra), which fully explores and
expounds the principle, viz.: Bright v. Boyd, 2 Story, C. C.,
605; Mohr v. Tulip, 40 Wis., 66; Grant v. Loyd, 12 S. & M.,
191; Levy v. Riley, 4 Or., 392; Chambers v. Jones, 72 Ill.,
275; Short v. Porter, 44 Miss., 533; Williamson v. William-
son, 3 S. & M., 715; Douglass v. Bennett, 51 Miss., 680;
Hudgin v. Hudgin, 6 Grattan, 320; Winslow v. Crowell, 32
Wis., 639; Dunbar v. Creditors, 2 La. Ann., 727; Stock-
ton v. Downey, 6 La. Ann., 581; Ragland v. Green, 14 S.
& M., 194; Haynes v. Meeks, 10 Cal., 110. Upon these
authorities, which we deem quite satisfactory, consistent
with justice, and the decisions of our own courts bearing
upon the principles involved in this case, we conclude that
the plaintiffs were not entitled to recover the land sued
for except upon the condition of paying to the assignees
of J. G. Hunt one-half of the amount of the purchase money
paid to the executor, with legal interest thereon from the
date of payment. The decree should in such case fix a
period within which the plaintiffs should pay the money into
court, prohibiting the issuance of a writ of possession until
said payment was made, and decreeing, further, that if the
plaintiffs failed to pay within the time limited in the judg-

ment, that the title to the land should be vested in the defendants, if they are shown to be invested with Hunt's title. Bailey *v.* White, 13 Tex., 117; Brobst *v.* Brock, 10 Wall., 533; and see Prince & Zuber *v.* Malone, decided by this court at the present term.

The rights of the defendants to a like equitable adjustment in respect to the improvements made upon the land are not questioned, it seems, in the agreed case before us, and it appears from the decree of the court, contained in the record, that they were considered and acted upon by the court; yet the facts agreed on contain no statement in relation to the subject of the improvements nor their value; nor, indeed, is any complaint made by the appellants concerning this branch of their case, but, to the contrary, the parties agree "that upon the facts in evidence there is no error in the judgment of the court, unless the title to the land in controversy was divested out of said plaintiffs, and the plaintiffs are estopped from recovery of the same by reason of the facts," which are recited in the agreement, and which have already been mainly given in the statement of the case. In this connection, however, it is not amiss to refer to the well established doctrine which applies to the case, and is thus stated by Judge Story in the case of Bright *v.* Boyd, 1 Story, 478, and 2 id., 605: "A *bona fide* purchaser for a valuable consideration, without notice of any defect in his title, who makes improvements and meliorations upon the estate, has a lien or charge thereupon for the increased value which is thereby given to the estate beyond its value without them, and a court of equity will enforce the lien or charge against the true owner, who recovers the estate in a suit at law against the purchaser."

In view of the limitations expressed by the parties in the agreed statement before referred to, and to the state of the record as the same is presented to us, we deem it inappropriate to anticipate the equities requiring adjustment between the parties in regard to improvements, use and occupation, if any such should be set up, or to attempt to prescribe or indicate the rules which should govern the court

trying the case, applicable to the proper settlement of these collateral and incidental equities.

Reverting to the proposition which has been expressed, that the plaintiffs are only entitled to recover upon making payment to the assignees of J. G. Hunt, we find it laid down that " when a void sale is made under proceedings to foreclose a mortgage, there seems to be no doubt that the purchaser succeeds to the title and rights of the mortgagee, and may enforce them as the mortgagee could have done but for the sale." Freeman's Void Judicial Sales, sec. 50. Citing Brobst v. Brock, 10 Wall., 519; Jackson v. Bowen, 7 Cow., 13; Gilbert v. Cooley, Walker's Ch., 494. Applying the analogies of this principle to the case before us, we conclude that the defendants, holding as vendees under conveyances from Hunt, are subrogated to his rights, and have succeeded to them, and are entitled to claim their beneficial enforcement in their favor, and therefore to receive the money which Hunt would have been entitled to in case he had never conveyed, and this action had been brought against him alone.

For the reasons given, it is our opinion that the judgment in this case shall be reversed and that the cause be remanded for further proceedings.

REVERSED AND REMANDED.