CHAS. P. MILLER et al., Defendants in Error, v. JAMES R. KELSAY, Plaintiff in Error.

Kansas City Court of Appeals, November 6, 1905.

1. FORMER ADJUDICATION: Fraud: Participation. Held, that the facts of the fraud practiced and plaintiff's participation therein were not, in view of the anterior litigation between the parties, open questions in this case.

2. EQUITY: Forfeitures: Clean Hands: Fraud. As equity refuses to impose fines and forfeitures upon wrongdoers and confines its relief to the restoration of all rights affected by fraud, so it closes its door in the face of those stripped of their legal rights by their own act and smirched with their own fraud; and so fraudfeasors who paid certain judgments with the view to cheat the defendant out of his homestead will be refused the restoration of said judgments and a subrogation to the rights of the original judgment creditors.

Error to Moniteau Circuit Court.—*Hon. James E. Hazell,* Judge.

REVERSED.

*Edmund Burke* and *John Cosgrove* for plaintiff in error.

(1) The application of the money in the hands of the sheriff, to the payment and satisfaction of the executions, extinguished the judgment. The judgment in

contemplation of law was paid, and there could be no suit maintained on a judgment that had been paid and satisfied. Mill Company v. Sugg, 83 Mo. 476; Wyatt v. Fromme, 70 Mo. App. 613. There was no right of action in plaintiffs at the time of the commencement of this suit, and they could not maintain a suit against defendant upon a satisfied judgment as long as the satisfaction remained in force. The cause of action must subsist at the date the suit is commenced. Tobin v. McCann, 17 Mo. App. 481; Cohen v. Camp, 46 Mo. 179; Bank v. McMenamy, 35 Mo. App. 206. (2) Neither the bank nor plaintiffs should, after having been adjudged twice, in matters growing out of subject-matter of this litigation to be wrongdoers, be permitted to profit by their misconduct. Kelsay v. Bank, 166 Mo. 157. (3) Plaintiffs were not innocent purchasers at the sale made by Inglish. On the contrary, plaintiffs wrongfully combined with the Farmers & Traders Bank to deprive defendant of his homestead rights and to oppress him, and are in no sense innocent purchasers. Young v. Schofield, 132 Mo. 650; Kelsay v. Bank, supra; Southworth v. Hopkins, 11 Mo. 331. (4) If this suit be treated as an equitable one, then neither plaintiffs nor the bank are in a position to invoke the aid of a court of equity. They do not come into court with "clean hands." Their purchase at the sales made by Inglish under the deeds of trust was tainted with fraud and oppression. The courts will not extricate them from the position in which they have placed themselves in the furtherance of their oppressive and fraudulent scheme. Conner v. Black, 119 Mo. 126; 1 Pomeroy's Equity, Jur. (2 Ed.), sec. 397; Bell v. Mulholland, 90 Mo. App. 620.

*W. M. Williams* and *Moore & Williams* for defendants in error.

(1) The application of plaintiff's money undoubtedly satisfied the judgments against the defendant, and

they were so entered of record. It is only upon this ground that plaintiffs are entitled to a standing in court. Plaintiffs' remedy was not to set aside the entry of satisfaction and reinstate the judgments. They were not parties to the judgments and the judgment creditors had been paid in full. To reinstate the judgments would simply have given the execution creditors double payment. (2) Plaintiffs purchased defendant's land at a public sale, and paid their money. The trial court found, and so stated in its judgment, that this purchase was made in good faith, and under the honest belief that the title passed to them. The "money was regularly paid to the creditor and went to extinguish the debt against the debtor. It was, then, so much paid for the use and benefit of the debtor." The debtor, having subsequently regained the land is liable to the plaintiffs for the amount of their money used to extinguish the judgments against him and this was so ruled in McLean v. Martin, 45 Mo. 393; Wilchinsky v. Cavender, 72 Mo. 193; McGee v. Ellis, 4 Litt. 244; Duncan v. Gainey, 108 Ind. 579; Muir v. Craig, 3 Blackf. 293; Bents v. Cole, 7 Blackf. 268; Valles' Heirs v. Fleming, 29 Mo. 152; Davis v. Gaines, 104 U. S. 386; Springs v. Harvin, 56 N. C. 99.

JOHNSON, J.—In 1895 the Farmers and Traders Bank of California, Missouri, recovered judgment in the circuit court of Moniteau county against James R. Kelsay (defendant here), in the sum of $221 and costs. Kelsay was then the owner of a homestead, containing about one hundred acres of land, within said county subject to two deeds of trust, both held by Dr. J. M. Powers. The first secured a note of $400 and interest, and the second one of $300 and interest. Both were notes executed by Kelsay to Powers as payee. In 1893 the administrator of the estate of S. D. Bayne, deceased, recovered judgment against Kelsay in the circuit court of Moniteau county in the sum of $146.45 and costs. In 1895 Warren T. Miller, one of the plaintiffs in this action, purchased

the two notes secured by trust deeds and in September, 1897, sold and transferred them to the Farmers and Traders Bank. Shortly after becoming the owner of the notes the bank caused all of the land to be advertised for sale, under both trust deeds, by the sheriff of the county, who assumed to act as alternate trustee for Allen James, the trustee named in the deeds. On the day advertised, December 28, 1897, the sheriff, holding an execution issued upon each judgment, first sold the land conveyed in one of the trust deeds for $1000, to the plaintiffs. This sum exceeded the entire amount due on both notes and the costs of the sale, but the sheriff proceeded to sell under the remaining deed and sold the land therein conveyed for $550, to the plaintiffs. The entire sum of $1,550 was immediately paid by plaintiffs to the sheriff, who at once levied both executions on the excess of proceeds remaining after the payment of the two secured notes and the costs of the sale.

Both judgments paid by the funds thus realized were satisfied of record and the sheriff offered to pay over to Kelsay the residue of the proceeds, but the latter declined to receive them and brought suit in the circuit court of Moniteau county against the bank, the sheriff and plaintiffs, to set aside the deeds given by the sheriff to the plaintiffs pursuant to the sale on the ground that the defendants conspired to fraudulently deprive him of his homestead, and that the sale was a part of the fraudulent scheme concocted. The court upon a hearing entered a decree on the 6th of May, 1898, granting the relief prayed for. The defendants in that action thereupon appealed to the Supreme Court and the judgment was affirmed December 17, 1901. [Kelsay v. Farmers & Traders Bank, 166 Mo. 157.]

Thereafter the parties disagreed over the construction of the opinion with respect to the payment of interest on the notes during the period of litigation and another suit followed, which went to the Supreme Court and was determined by that tribunal on February 21,

1905. [Farmers & Traders Bank v. Kelsay, 186 Mo. 648.]

The suit before us is in equity and was brought on April 2, 1902, in the Moniteau Circuit Court. The relief sought is the recovery of a personal judgment against Kelsay for the amount of the judgments and interest thereon recovered by the bank and the administrator against him, and which were paid by the sheriff out of the proceeds derived from the sale and satisfied of record, and also a decree subrogating plaintiffs to all of the rights of the judgment creditors. It is alleged in the petition that plaintiffs were innocent purchasers at the sale and their right to recover seems to be based upon that assumption. The court adopted this view and granted the relief sought. From this judgment Kelsay appealed.

We cannot divine any principle under which this contention may be entertained at this stage of the protracted and bitter litigation waged by these parties. The learned judge seems to have entirely ignored the adjudications found in the preceding decree, which were to the fullest extent approved and adopted by the Supreme Court in the opinion rendered. Among them are the following facts:

The trustee James did not refuse to act and was not disqualified. He was at the sale and before any of the property was sold gave warning to all present, including plaintiffs, of the fact that made the proceeding invalid. After the land was advertised Kelsay tendered the full amount due on the mortgage notes but the bank refused to accept the tender unless the judgments were also paid. Plaintiff knew that the sole purpose of the bank, in pretending to sell under the trust deeds, was to collect its judgment out of exempt property, and they conspired with the bank and the sheriff to perpetrate this unlawful and fraudulent assault upon the rights of the debtor. The court in that decree found as a fact "that the defendants Charles P. and Warren T. Miller had notice of the

purpose of said bank to collect said judgments in addition to the amount secured by said deeds of trust and were parties to said scheme and contrivance." This finding was sustained by the Supreme Court (Kelsay v. Bank, supra, 1. c. 171), and in the opinion filed in the case of Bank v. Kelsay, the latter court held as a fact that "The bank had confederated with the Millers to charge Kelsay's homestead with other debts for which it was not liable." The facts of the fraud practiced and of plaintiff's participation therein were therefore not open questions on the trial of the present case. The Millers were parties to the preceding litigation, made their defense, were found to be culpable, and are concluded by the judgment in that case on that issue.

Therefore in the present inquiry we will disregard the finding of good faith on the part of the plaintiffs and will look upon them as wrongdoers equally guilty in act and knowledge with the bank itself. Moreover, it appears from the admissions made by plaintiffs, that the bank has fully reimbursed them the purchase money paid to the sheriff and that this action is in fact being prosecuted by the bank, the real party in interest. Passing the question of the sufficiency of the petition under this state of facts, we will consider the principles involved in the assertion, by plaintiffs, of any right to relief in equity.

An examination of the authorities, relied upon by plaintiffs, of which the cases of McLean v. Martin, 45 Mo. 393, and Valle's Heirs v. Fleming's Heirs, 29 Mo. 152, are typical, discloses their lack of pertinency to the issues before us. They deal with the rule of *caveat emptor* as applied to innocent purchasers at sales invalid on account of some informality, irregularity or mistake. In this case, the infirmity in the proceedings results from fraud, knowingly and wilfully done. Plaintiffs were guilty, not innocent purchasers and paid their money knowing that the sale was a fraud and that its proceeds would be used in a wrongful purpose. The

bank acted under no mistake in causing the judgments to be satisfied of record but procured this to be done as the final essential act in the perpetration of fraud. Both the Millers and the bank are in the same case. Defeated in their attempt to deprive Kelsay of his homestead, they appeal to a court of equity to relieve them from the consequences of their own wrong. In effect, they are asking for the restoration of the judgments which they satisfied in turpitude upon the ground that, as they were honestly obtained and represented valid debts of Kelsay, he should not be relieved of them; in other words, we are besought to restore the status of the parties that obtained at the time the bank and plaintiffs inaugurated their wrongful enterprise and to treat as nullity everything that was done in the perpetration of fraud. If this was an action brought by Kelsay to obtain the cancellation and satisfaction of record of the judgments on the assumption that they had in fact been paid out of the proceeds of the fraudulent sale, we would not hesitate to deny him relief under the maxim that he who seeks equity must do equity. His contention in such supposititious case that another should be compelled. to pay his honest debt would be so unconscientious as to be intolerable. This seems to be the view taken by the Supreme Court in the case of Martin v. Turnbaugh, 153 Mo. l. c. 189, under facts analogous to those supposed. In that case it is said: "Courts will undo what has been fraudulently done and restore the status quo of the parties. They will also refuse to aid a party to a fraud to recover back what he expended in perpetrating the fraud so far as such a recovery would conflict with the rights of innocent parties. But civil courts impose no other punishment for such wrongs. They do not impose fines or other forfeitures beyond the forfeitures of the advantages gained by the fraud. They do not possess the right to take away any lawful rights of either party to the fraud possessed prior to the perpetration of the fraud and which exist wholly independent of the fraud."

While it is true courts of equity will refuse to impose fines and forfeitures upon such wrongdoers at the suit of the injured and will confine relief to the restoration of all rights affected by the fraud, it does not follow that plaintiffs have any standing here. The rule that whoever seeks equity must come with clean hands is fundamental and inexorable. Plaintiffs are not in the fortunate position of the fraudulent grantee in the Martin case, who was in possession of the land, but stand before us stripped of all legal right by their own act and smirched with their own fraud. Courts of equity have always closed the door in the face of such petitioners and have refused to have anything to do with them because being in a plight from their own inequity, there is no equity for them. Judicial ostracism is the extent of the punishment inflicted. [Freeman on Void Judicial Sales, sec. 54, and cases cited; 17 Am. and Eng. Ency. of Law (2 Ed.), 1018, and cases cited.]

It follows from the views expressed that the judgment must be reversed. All concur.