## W. H. Short, Admr., *v.* R. A. Porter.

1. Administrator—Personal liability—Chancery jurisdiction.—An administrator can contract no new liability on the part of the estate; and if he gives his own note to pay a debt of the intestate the estate will not be released unless such is the agreement of the parties, and the creditor may proceed against either the maker of the note personally, or resort to the estate by bill in chancery.

2. Administrator—Rights of—Third persons—Equity.—Where an administrator, with his own money, pays the debts of the intestate, he should be credited in his accounts in the probate court, and may sell the effects to reimburse himself; and if the estate has passed into the hands of the heirs and distributees, he can enforce payment from them by bill in chancery. And if a third person advances money which is actually applied to exonerate the estate from debt, then the duty exists that the estate, or the heirs and distributees who have received the property, shall refund. The advancement and the application constitute the equity.

3. Void probate sale—Innocent purchaser—Reimbursement—Chancery.—B., as administrator, sold land under a decree of the probate court, to pay debts, and P. became the purchaser, and paid one-third of the price in cash, gave his notes for the remainder, took a deed, etc. The sale was void for irregularities on the part of the administrator, of which P. was ignorant, but he was getting a good title. B. resigned his trust, and S. was appointed administrator *de bonis non*, who obtained a decree to sell the same land, and sold it for one-third cash, the balance on time. At this sale P. bought one-half of the land, and paid said one-third in cash. The money paid by P. on his first purchase was used and applied to pay the preferred debts due from the estate on these lands. *Held:* That P. is entitled to be reimbursed out of the estate the sum of money he so advanced, and may recover by bill in chancery.

4. Continuation of lien—Marshaling assets—Subrogation.—Specific liens created by the decedent in his life-time, or which accrued by operation of law, viz. : mortgages, vendor's liens, judgments in force in his life-time, have the same privileges and priorities against the legal representative, and if the money on a void probate order of sale is applied to pay off a vendor's lien, a mortgage, or judgment, there should be a marshaling of assets as to the general creditors, and as against them the purchaser should stand in the shoes of the creditor, whose lien was thus satisfied *pro tanto* or in full.

5. Probate sale—Risk of purchaser—Void warranty—Caveat emptor.—The administrator has no authority to bind the estate by express or implied warranty of the soundness of the property sold. A purchaser at a probate sale of a decedent's property takes the risk of title. The maxim of *caveat emptor* applies, and he cannot be discharged from his contract by reason of the defective title of the decedent.

Error to the chancery court of Panola county. Simmons, J.

*H. A. Barr*, for appellant.

*Walters & Scruggs*, for appellee.

Simrall, J.:

At the October term, 1866, of the probate court of Panola county, Blankinship, administrator of the estate of James H. Dyson, deceased, applied by petition for license to sell the

lands of the intestate, to pay the debts (the estate having been represented and declared insolvent); the sale was ordered on the terms of one-third cash, the balance at one and two years credit. Shortly afterwards, the sale was made, when R. A. Porter, the complainant, became the purchaser, at the aggregate sum of $6,720, of which one-third in cash was paid to the admintstrator, and two promissory notes made for the balance. The sale was ascertained to be void or ineffectual to pass the title, because the administrator had failed to give the bond for the application of the proceeds required by the statute, of which fact, Porter was ignorant, but thought he was getting the title. Shortly after the sale, Blankinship resigned his trust, and W. H. Short was appointed his successor. In December, 1869, or January 1870, Short, administrator *de bonis non*, obtained a decree to sell the same lands, on the terms of one-third cash, and the balance on a credit of twelve months. At the sale under this decree, Porter bought one-half the section at the price of $8 75 per acre, and one B. R. Blankinship bought the other half at $14 per acre. Porter paid the cash payment of one-third. The payment made by Porter on his first purchase from Blankinship, the administrator, was used and applied to pay off a preferred debt due from the estate on these lands which were in judgment, and were a lien on the land, and other property of Dyson, the deceased.

Prayer is for marshaling the assets, and that complainant may be first paid, before the general creditors, the cash paid on the first sale of the land, etc.

The question is, shall the complainant have relief, and to what extent. Is it allowed a purchaser who has adventured his money for property at probate sales, in any circumstances, to recover it back, if there has been a failure of title, either because of defect in the probate court proceedings, or for want of title in the testator or intestate, or the wards. Such sales are made under judicial authority and license, and the judiciary has no power to bind the heir, distributee, or ward, by a warranty.

In Phipp v. Wheelis, 33 Miss., 652, a guardian did not by the sale pass the title of his ward. It was recognized as the right of the purchaser (on ascertaining the state of the title) to offer to rescind, restore the possession, account for the rents, and, as to the deferred payments in the form of outstanding notes, he could enjoin their collection.

Wood v. Ridley, 27 Miss., 149, et sequiter, contains, perhaps, as clear a statement of the principles discussed as is to be found in our books. The effort was to cast the onus of certain debts represented by promissory notes made by the administrator and other parties, on the estate. It was conceded that the administrator could contract no new liability, and that when he had given his own note in payment of the intestate, the estate would not be released, unless such was the agreement of the parties; and that the creditor could at his election proceed against the makers of the new note personally, or resort to the estate by bill in chancery. If, however, the administrator, with his own money, pay off the debts of the intestate, he should be credited in his accounts in the probate court, and might sell the effects for reimbursment, and if the estate had passed into the hands of the heirs and distributees, he could enforce payment from them by bill in chancery.

The administrator has no power to borrow money for the exigencies of the estate, and create a debt (on the note given for the borrowed money) on the estate. The equity which underlies all these transactions and others in the same analogy, is this: If money is advanced, which is actually applied to exonerate the estate from debt, then the duty exists that the estate, or the heirs and distributees who have received the property, shall refund. The advancement is the inception, the application is the completion of the equity. Like many, perhaps most of the beneficent principles of equity, it is the dictate of good conscience springing out of natural justice; for it would be abhorrent to reason, and a reproach to jurisprudence, that an administrator should, out of his own funds, relieve the estate from debt, and

deliver it over to the heir and distributee free and unembar-
rassed, and yet there be no duty or obligation upon the
heir and distributee to repay money thus used for their bene-
fit. Their measure of right is to the surplus of the property,
after the burden of debt imposed by the intestate has been
liquidated. If they receive the property with the burden
merely shifted from the original creditors to the administra-
tor, who has satisfied them with his own means, they realize
the full extent of their right when they have appropriated as
much as may be necessary to imburse the administrator;
and it is wholly indifferent to them, whether they pay the
original creditors or some other person who has satisfied
them, and is entitled by substitution to their place and privi-
leges.

The law contingently charges the lands with the debts.
The administrator is the proper person, by appropriate judi-
cial proceedings, to make that charge available for the creditor.
He can obtain a license to sell. The purpose is, that he
shall divest the title descended from the intestate to his
heirs by sale. In this case, Blankinship, the administrator,
failed to divest the title of the heirs by the sale, not because
of the want of title in the intestate, but for neglect on his
part to comply with the conditions of the statute. Porter,
the purchaser, in good faith, and ignorant of such non-com-
pliance, paid the cash installment. Very shortly after the
discovery there was a rescission of the sale made by the
administrator *de bonis non* and Porter, not a formal rescission.
But what is fully equivalent to it—the administrator *de bonis
non* treats the sale as void, and applies *de novo* for a license
to sell. Porter recognizes the propriety of this course by
making no objection to the sale, but actually appearing and
becoming a purchaser of part of the property, paying cash,
accepting a deed and making notes for the deferred payment.
At the last sale a better price was obtained than at the first.

In what attitude did this place Porter? It would not be
questioned if there had been a formal rescission, that Porter
should be refunded what he had paid, his notes should be

delivered up, and that he should account for the notes, etc.
The doctrine of rescission goes upon the idea of restoring the
parties as nearly as may be, to the condition of *statu quo*.
There is no countenance on either reason or law, that the
vendor shall take back his land and at the same time keep
the money of the purchaser.  But rather that each shall be
restored to, and reinvested with what he had parted with.
But we had said that the acts of these parties were tantamount
to a rescission.  In this aspect of the case, then, the com-.
plainant was entitled to relief.

But the equity of the complainant rests upon the further
impregnable ground, that he, supposing that he was acquir-
ing the title of the heirs of intestate, at the sale made by
the administrator, made a cash payment of —— dollars,
which was actually used and applied by the administrator to
discharge a preferred lien on the land.  As to the heirs, that
application of the money, exonerated their property *pro
tanto*.  It went to relieve an incumberance on the land.  They
would not be permitted to recover back the land, for the
reason that the probate decree and sale was invalid, and
therefore, did not divest their title, except upon the condi-
tion that they restored to the purchaser his money, or rather
to the extent of the cash payment.  The purchaser would
have a charge and equity on the land, enforcable against the
heirs.  In Jayne et al. v. Boisgerard, 39 Miss., 799, a bill was
brought by the heirs to set aside a sale and conveyance made
by the administrator, on account of the invalidity of the
order of the probate court, as casting a cloud and suspicion
on their title.  Conceding the invalidity of the order, it was
nevertheless declared that there was an equity in favor of
the purchaser, to the extent of the application of the money,
" actually appropriated for their benefit."  If it could be
proved that the money was paid to the creditors of the
estate, then manifestly it was a payment for the benefit of
the heirs, and within the principle recognized by the court,
they ought not to disturb the purchaser, without first return-·
ing the money.

This estate being insolvent, and having been so declared, the heirs have no concern or interest in the question litigated. It turns very much on the doctrine of marshaling assets. Although the general principle of distributing an insolvent's estate, is equality among creditors, yet full respect must be paid to specific liens created by the decedent in his life-time, or which accrued by operation of law. For instance, mortgages, vendors' liens, and judgments, in force in the life-time, have the same privileges and priorities against the legal representative. Now, if the money, raised upon a void probate sale, is applied by the administrator to pay off a vendor's lien, or a mortgage, or a judgment, the analogy furnished by the case last cited, would require, that as to general creditors, there should be a marshaling of the assets, and, as against them, the purchaser should stand in the shoes of the creditor whose lien was satisfied *pro tanto*, or in full. It was held by the court of appeals, of Kentucky, that a purchaser of a chattel, who lost it by a recovery by a paramount title at the suit of a stranger, had an equity to be substituted to the judgment creditor. It was upon the reasonable ground, that his money had paid off the defendant's debt, that he got nothing at sheriff's sale, nor had the defendant lost anything; therefore, he should be put in the most favorable position to be restored his money. It was said, in George v. Bean et al., 30 Miss., 151, that an administrator warrants neither the title nor the quality of the thing he sells. "There is, perhaps, an implied warranty, which will bind the estate, as to the title of the property." Hutchins v. Brooks, 31 Miss., 431, was the sale of a slave, and the effort was to hold the administrator bound by representations as to the health and soundness. It was declared that he had no authority to bind the estate by "an express or implied warranty of the soundness of the property sold." The maxim of *caveat emptor* applies. In the subsequent case of Cogan v. Foley, 36 Miss., 185, it is declared to be the well sanctioned principle of the court, that a purchaser at a probate sale of a decedent's property takes the risk of title.

The principle of caveat emptor applies. And he cannot be discharged from his contract by reason of the defective title of the decedent.

The defect in this title is that the administrator did not give the bond to properly apply the proceeds. That bond might have been given after, as well as before the decree, if made before the sale. It is inferable, therefore, that the circumstances authorizing the order, that is, insolvency and service of notice on the heirs, existed. There was, then, a judicial declaration that the lands should be turned into money for the creditors. The executor could not execute this power until he made the bond. Now, if this first sale had been reported to the court, and confirmation refused for lack of the bond, can there be a doubt that it would have been the duty of the court to have directed the cash payment to have been delivered back to the purchaser? If that be so, on directing a new sale, on a subsequent discovery of the defect, was it not the plain right of the purchaser to be reimbursed his money? Whilst there is no warranty of the title of the intestate, as held in the cases cited, and whilst the purchaser takes the hazard of title and quality, yet when the title is good, and money is paid for it, but it fails to pass by reason of imperfection in the probate proceedings, or irregularities in executing the decree, there is a most cogent equity that the purchaser should be restored to his former condition, if a re-sale is ordered. A court of equity, by virtue of the pliabilitiy of its remedies, will trace the money, and so deal with it as to extend the most complete relief. If, as in this case, the administrator has paid it over to a creditor who has a superior lien on the land, it will lay hold of the fund for distribution among the creditors of the insolvent, and deduct enough from it to indemnify the purchaser. If it has not been applied, and remains in the hands of the administrator, it will control it there.

There is an analogy between this case and that where money has been collected under an erroneous decree subsequently raised; if it has thus been paid under a chancery

decree, the court that rendered it has unquestionably the power to order restitution of money conceded or paid upon it. Madison's executors and heirs v. Wallace's executors, 2 Dana, 64. Here the sale was treated as insufficient to pass the title, but the money was paid on its credit. The administrator, the heirs, and the purchaser, all seem to concur in that idea. Its operation is not different from a reversal of a decree in which money has been paid.

We concur with the chancery court, that there is equity in the bill, and therefore, affirm the decree.