## H. B. McGee et al. *v*. W. A. Wallis et al.

1. **Equitable Estoppel.** *Void execution sale. Charge for purchase-money.*
   The purchaser of a testator's land at a sale under a judgment against
   his executor acquires no title, but if, in the belief that he is obtaining
   one, he pays the purchase-money which is applied to the judgment
   debt with which the land is charged by the will, a recovery in eject-
   ment by the heirs will be enjoined until he is reimbursed.

2. **Same.** *Doctrine applicable to sheriff's sale. Improvements.*
   The equitable doctrine which, under such circumstances, prevents the
   holder of the legal title from recovering the land without refunding
   the purchase-money, like that which compels compensation for im-
   provements put thereon by the purchaser in good faith, is as appli-
   cable to a sale under an execution as to one under a decree of court.

3. **Same.** *Caveat emptor. In what cases applicable.*
   No distinction, in this respect, between execution and private sales is
   established by the maxim *Caveat emptor*, which applies equally to
   sales by administrators or sheriffs in cases of want of ownership by
   the defendant in execution or the intestate, but is inapplicable to
   defects caused by a failure of the sale to pass the title.

Appeal from the Chancery Court of Holmes County.

Hon. R. W. Williamson, Chancellor.

*C. V. Gwin* and *T. C. Catchings*, for the appellants.

Independently of the statute (Acts 1873, p. 41), a court of
equity may charge the purchase-money on land, where it is
shown to have been used in discharging liabilities of the estate,
whether the sale was made in pursuance of the decree of a
court of competent jurisdiction or not. The right accrues
whenever the sale is made under process of law. Whether
the process is a nullity or not, the principle is the same.
The doctrine upon which claims of this character rest, as well
as the right to recover for improvements, is discussed in the
following cases: *Grant* v. *Lloyd*, 12 S. & M. 191; *Jayne* v.
*Boisgerard*, 39 Miss. 796; *Short* v. *Porter*, 44 Miss. 533;
*Cole* v. *Johnson*, 53 Miss. 94; *Gaines* v. *Kennedy*, 53 Miss. 103;
*Valle* v. *Fleming*, 29 Mo. 152; *Hudgin* v. *Hudgin*, 6 Gratt. 320;
*Bright* v. *Boyd*, 1 Story, 478; s. c. 2 Story, 607; *McLaughlin*
v. *Daniel*, 8 Dana, 182; *Bentley* v. *Long*, 1 Strobh. Eq. 43;
*Howard* v. *North*, 5 Texas, 290; *Dufour* v. *Camfranc*, 11 Martin,

607 ; *Peltz* v. *Clarke*, 5 Peters, 480. While the execution was a nullity, it purported to be legal process, was so treated by the parties, and under it the land was sold. Relying upon its validity, the purchaser paid for the land, improved it, and has occupied it for years. The heirs received the benefit of the sale, and no one has ever pretended that the title acquired was bad, until this ejectment suit was commenced. McGee's money has paid the debts of Wallis, which, by the terms of his will, were expressly charged upon his lands, and but for which they would long since have been sold. It would be grossly inequitable for them to recover the land without repaying the money thus expended by McGee in relieving their father's estate from liability to his former wards.

*R. A. Anderson*, for the appellees.

The purchaser at a sheriff's sale of land, made to satisfy a judgment of the Probate Court against an executor without notice to the heirs, has no equity in the land for reimbursement of the purchase-money which is applied to the judgment. If the Probate or Chancery Court, after notifying the heirs, had decreed the sale, the purchaser could have enjoined the heirs' recovery in ejectment. *Woods* v. *Ridley*, 27 Miss. 119 ; *Short* v. *Porter*, 44 Miss. 533 ; *Wilie* v. *Brooks*, 45 Miss. 542 ; *Cole* v. *Johnson*, 53 Miss. 94 ; *Gaines* v. *Kennedy*, 53 Miss. 103. But the appellants are not protected by the doctrine of those cases, or by the act of Feb. 11, 1873 (Acts 1873, p. 41), for the sale in question was not made under a decree or by an administrator, executor or commissioner. It was an execution sale, by a ministerial officer, who possessed no judicial powers, reported to no court, and did not make a deed with covenant of warranty. To such sales the rule *Caveat emptor* applies. Rorer on Judicial Sales, 458 ; *Davis* v. *Heard*, 44 Miss. 50 ; *Miller* v. *Palmer*, 55 Miss. 323. The appellants stand in no more favorable position than one who advances money to an executor to pay the debts of the estate. There is a want of the privity between the heirs and the purchaser, which is essential in order for the appellants to maintain their bill. 1 Dan. Ch. Prac. 322, note 6. The sale by the sheriff was void. Rorer on Judicial Sales, 246, 486, 488, 740, 784 ; *Young* v. *Lockhart*, 41 Miss. 460. If the purchaser is subro-

gated to the executor's rights by reason of the advance, the sale must be made on proper proceedings, to which the heirs are parties, on the probate side of the Chancery Court. No help is afforded by the fact that the land was charged by the will with the debts; for the executor, who alone had the power, did not make the sale.

Geodge, C. J., delivered the opinion of the court.

Joseph Wallis was guardian of the four minor children of his deceased brother, and, as such, was indebted to each one of his wards. He died in November, 1861, without having made a final settlement of his accounts. He left a will, which was afterwards duly probated, in which he appointed one Weatherby his executor, and devised to him all his real and personal estate to have and hold the same in trust for the payment of his debts. The will directed that immediately after his death, his real estate and perishable property should be sold by the executor, and that his debts should be paid, and the remainder invested for the benefit of his heirs. Weatherby, the executor, settled the guardianship accounts of Joseph Wallis, and a considerable sum was found due to each of the wards, for which decrees were entered in the Probate Court against said executor, authorizing executions to be issued for the collection of the same. In 1866 executions were issued on these decrees, and placed in the hands of the sheriff of Attala County, who levied the same on a tract of land which belonged to the deceased guardian and testator at the time of his death. The sheriff, after due advertisement, offered said land to the highest bidder, and the appellant, H. B. McGee, became the purchaser for the sum of twenty-seven hundred dollars. McGee paid his bid to the sheriff, who paid it to the plaintiffs in the executions. McGee afterward sold the land with warranty of title to another one of the appellants, who sold to the third. In 1879 the heirs of the said Joseph Wallis brought ejectment and recovered this land, upon the ground that the sale was void, the executions and judgments against the executor not authorizing a levy on realty. On this state of facts, the appellants filed their bill in the court below, seeking to restrain the enforcement of the judgment in ejectment, until the plaintiffs therein should pay the

purchase-money bid at the sheriff's sale, and which had gone to the discharge of a valid debt of Joseph Wallis, the ancestor of the plaintiffs in ejectment. The defendants in that bill, the appellees here, demurred to it, and their demurrer was sustained and the bill dismissed, and the complainants appealed.

The precise question presented by this record, though new in this State, depends for its solution upon principles which have received the sanction of this court in several decided cases. It will be observed that the debt due the wards of Joseph Wallis, and established by the decrees of the Probate Court in their favor, was not only by the provisions of the statute, but also by the express terms of the will, made a charge upon all the estate of the testator, both real and personal; and that by the sale of the land, which is the subject of this controversy, the debt was satisfied. This sale was void, because a judgment against an executor does not authorize a levy on and sale of the real estate of his testator. The result is, that though the sale operated to raise the money, which went to the satisfaction of these decrees, yet no title was conferred by it on the purchaser. His money has exonerated the property of the estate from a legal and valid charge, and he is disappointed in the belief, on which he acted in parting with his money, that he was acquiring a valid title to the property which he bought. The heirs of the testator now seek to recover the land thus erroneously sold, and, at the same time, claim to retain the benefit which accrued to them by the satisfaction of the debt. Whether this claim can be successfully maintained is the question presented for our decision. If the appellants can successfully resist this claim, their right must be founded on the maxim of the common law, *Nemo debet locupletari ex alterius incommodo*, and on a similar maxim of the civil law, which Judge Story, in *Bright* v. *Boyd*, 1 Story, 478, 494, says more exactly expresses the idea, viz. *Jure naturæ æquum est, neminem cum alterius detrimento et injuria fieri locupletiorem.*

This principle seems to have first received practical recognition in courts of equity in the rule adopted by those courts which gave to *bona fide* purchasers of land acquiring no title compensation for improvements which they had made under

the belief that they were the true owners. At first, however, in cases of that sort, relief was granted only when the true owner came into equity as a complainant seeking an account against the purchaser for mesne profits after a recovery of the land in an action at law, or when such owner had only an equitable title, and was compelled to sue in equity for a recovery of the land. In these cases, the court refused its aid to the complainant except upon the terms of compensation to the *bona fide* purchaser, for his improvements. Chancellor Walworth, as late as the year 1835, in *Putnam* v. *Ritchie*, 6 Paige, 405, declared that he had not been able to find a single case in England or America in which this relief was granted to the purchaser on a bill filed by him for that purpose; and he declined to make a precedent in that case, though recognizing the equity of the complainant's claim.

The first case, so far as our researches extend, in which this relief was granted on a bill filed by the purchaser against the true owner who had recovered the estate, is *Bright* v. *Boyd*, 1 Story, 478, decided in 1841. In that case, Judge Story, on a bill filed by the purchaser, not only gave him compensation for the improvements, but expressed his concurrence in the principle of the civil law, " that where a *bona fide* possessor or purchaser of real estate pays money to discharge any existing encumbrance or charge upon the estate, having no notice of any infirmity in his title, he is entitled to be repaid the amount of such payment by the true owner seeking to recover the estate from him." This principle seems now to be fully established. It has been recognized in the following cases in this court: *Jayne* v. *Boisgerard*, 39 Miss. 796; *Short* v. *Porter*, 44 Miss. 533; *Cole* v. *Johnson*, 53 Miss. 94; *Gaines* v. *Kennedy*, 53 Miss. 103. In *Short* v. *Porter*, this court decided that a purchaser of land at a void sale, made by an administrator for the payment of debts, was entitled to be subrogated to the rights of a lien creditor whose debt had been discharged by the money paid on the void purchase. Chief Justice Simrall, speaking for the court, said that the equity of the complainant rested upon the impregnable ground that he (the purchaser), supposing that he was acquiring the title of the heirs of the intestate, at the sale made by the administrator, made a cash

payment, which was actually used and applied by the adminis-
trator to discharge a preferred lien on the land. As to the
heirs, that application of the money exonerated their property
*pro tanto.* It went to release an incumbrance on the land.
They would not be permitted to recover back the land ex-
cept upon the condition that they restored to the purchaser
his money. He cited *Jayne* v. *Boisgerard*, 39 Miss. 796, which
recognizes the same principle. *Short* v. *Porter* was confirmed
in *Cole* v. *Johnson*, 53 Miss. 94. In *Gaines* v. *Kennedy*, 53 Miss.
103, this court, in a similar case, said : " It has been settled in
our jurisprudence, on grounds most just and equitable, that
where real estate has been sold for the payment of debts by an
administrator who has so used the fund, the heir cannot re-
cover the land, and hold it disincumbered of the intestate's
debts, which have been discharged by the money of the pur-
chaser, but the land will be charged with the amount of the
debts thus paid off for the use of the purchaser."

A similar decision was made by the court of appeals of
Virginia in *Hudgin* v. *Hudgin*, 6 Gratt. 320. In *Valle* v.
*Fleming*, 29 Mo. 152, the purchaser at a void administrator's
sale sought to be subrogated to the right of a mortgagee
whose debt had been paid off by the purchase-money. The
court, in an able and elaborate opinion, vindicated the doc-
trine of the above cited cases, and showed with how much
more force it applies to fix a charge on the land for the
money used to discharge a debt for which the estate was
bound, than to compensating the evicted purchaser for his
improvements. On this point, the court said: " It might
have been urged that the true owner, if ignorant of his title
and not aware of the improvements which the actual occu-
pant was putting on the land, ought not to pay for improve-
ments which he had not directly or indirectly authorized, and
which might not at all suit his wants or his fancy. But such
an argument could not be used in the case now before us.
The purchase-money has gone to extinguish a mortgage which
the owner was bound to extinguish before he could get the
land. It was not a matter of taste or fancy."

These decisions seem to be decisive of the question before
us ; but it is attempted to distinguish these cases from the one

at bar. It is urged that in all these cases there was an attempt to sell the land by the legal representatives of a decedent under the decree of a competent court; that though the decree was void because the formalities prescribed by law were not observed, it was nevertheless an actual attempt to condemn and sell the property by a tribunal having jurisdiction over the subject; that a sale made by a sheriff stands on a different footing, since it is but the unauthorized act of a purely ministerial officer, as to whose sales the maxim of *Caveat emptor* applies with full force.

· We do not perceive the justice of this distinction. The rule of the civil law, which we have quoted above from Judge Story, and which has now been fully incorporated into the equity jurisprudence of this State, embraces all cases in which a *bona fide* purchaser pays money to discharge any existing incumbrance or charge on the estate, having no knowledge of the infirmity of his title; and when it is applied to compensation for improvements made by a *bona fide* purchaser, who has been evicted by paramount title, the rule embraces all such, whether' they were purchasers at judicial or at private sales. The equity of the rule, it is clear, has no reference to the mode in which the *bona fide* purchaser had acquired possession, since there can be no policy which would prefer one mode to another, provided only the acquisition of possession ·was honestly made under a *bona fide* belief that the occupant acquired title.

·. This good faith must exist as a pre-requisite to the right of .the purchaser to demand compensation for improvements and a restitution of the purchase-money; and the ground upon which this compensation and restitution are exacted from the .owner is the plain injustice of permitting him to reap the benefits of the unrecompensed labor and money of another. The right of the purchaser to demand restitution is grounded on his good faith in making the .purchase; the duty of the owner to make the restitution arises from his having received the benefit of the money of the purchaser in releasing his estate from a legal charge. In cases like the one before us, the ·equity of the purchaser to a return of his money, and the ·inequity of allowing the true owner· to recover the land disen-

cumbered, without restoring the money by which the encumbrance was discharged, rise so high as to fully justify the Supreme Court of Missouri, in the case above cited from that State, in characterizing any Code of Laws which would deny the one or tolerate the other as being " very imperfect or very inequitable." See 29 Mo. 164.

The rule can derive no force or vitality from the circumstance that the void sale has been made under the void order of a court. Such an order is utterly null, and without any force whatever. Being such, it *per se* imparts no force to the sale, confers no right on purchasers, and deprives the owners of none. It is the belief of the purchaser that he is getting a good title, and the actual application of the money to the benefit of the owner in removing a charge on his estate, which constitute the equity. But the principle has been applied, in this State, to other cases besides sales. In its most enlarged application as heretofore recognized in this State, it may be said to embrace all cases in which a person advances money with the intent that it shall be applied, and it is actually applied, to remove a legal charge from an estate belonging to another, where the advance is in consequence of a belief, on the part of the creditor, whether well or ill founded, that he to whom he makes the advance stands in such relation to the estate that he has a right to make the application. Thus, in *Woods* v. *Ridley*, 27 Miss. 119, it was conceded that a person lending money to an administrator could thereby fix a liability on the estate to repay it, if it were actually used to pay a valid charge on it, the administrator having no other assets in his hands with which to make the payment. By such application beyond assets, the administrator would become a creditor of the estate, and Chief Justice Smith said that the lender's equity would arise from the use of the money in the payment of the debts of the estate, and being a creditor thereby of the administrator he would be permitted to take his place and be subrogated to his rights. The maxim of *Caveat emptor* is also without force to establish the distinction relied on. That maxim, under the laws of this State, is equally applicable to sales made by administrators and by sheriffs. It applies where there is a failure of title, because of a want of ownership in the property

by the defendant in execution or in the intestate, but it does not apply to defects in the title of the purchaser, occasioned by a failure of the sale to pass the title of the defendant or intestate. And this is the case at bar; the title of the decedent is undisputed, and is that on which his heirs have succeeded in the action of ejectment.

In *Howard* v. *North*, 5 Texas, 290, the court applied the principle to a sheriff's sale, which was void, and therefore failed to convey the title of the defendant in the execution. The court declared that the purchaser would be entitled to have the amount of his bid, paid in discharge of the execution, refunded before a restoration of the property would be decreed. In *Dufour* v. *Camfranc*, 11 Martin, 607, Judge Porter, speaking for the court, after having declared a sheriff's sale void, said: " It has been proved that the proceeds arising from the sale (sheriff's) of the slaves were applied to the discharge of the judgment debts of the plaintiff, and the court is of opinion that he cannot recover in this suit, until he repay that money. This is the doctrine expressly laid down by Febrero, Lib. 3, Cap. 2, § 5, n. 357. And we readily adopt it; for nothing could be more unjust than to permit a debtor to recover back his property, because the sale was irregular, and yet allow him to profit by that irregular sale, to discharge his debts." In *McLaughlin* v. *Daniel*, 8 Dana, 182, the Supreme Court of Kentucky applied the principle to a sheriff's sale, declaring that the purchaser who had got nothing was entitled to recover from the defendant in execution the money paid in discharge of his debt.

We unhesitatingly announce our concurrence in the principle which entitles the complainants to relief. It would be in the highest degree inequitable to allow these heirs to recover this land, and, at the same time, to hold it cleared of the charge which the complainants' money has extinguished. There is no obligation on them to return the money, if they will allow the sale to stand; but if they seek to avoid the sale, they must do so only on the just condition that they restore all the fruits of it which they have enjoyed. If the complainants make out the case stated in their bill, they will be entitled to have a decree enjoining the judgment at

law, unless the amount of the purchase-money, which may
be shown to have gone to the payment of just charges on the
estate of Joseph Wallis with legal interest, be refunded to
them. Unless this is done, and in some short time to be named
by the Chancellor, the injunction should be made perpetual.
As, however, it may turn out that the land is more valuable
than the amount that may be found due, and the defendants
may be unable to raise the money, the court may on their ap-
plication order a sale of the land to meet the payment; but if
a sale is ordered, it will be at the cost of the defendants exclu-
sively. Should there be an excess in the proceeds of the sale,
after paying the complainants' demand, it will belong to the
defendants. The bill shows that mesne profits and improve-
ments were settled by the judgment in ejectment, there being
an excess of two hundred dollars in favor of the complainants,
in the value of improvements over mesne profits. This two
hundred dollars, should a sale be decreed, must also be paid
out of the proceeds; but the mesne profits, accruing since the
judgment in ejectment, must be charged to the complainants.
Should no sale be asked for, the decree will simply be a per-
petual injunction against the defendants' claim to the land.

*Decree reversed, demurrer overruled and cause remanded.*