ELLEN WEAVER *v.* A. E. NORWOOD ET AL.

1. ESTATES OF DECEASED PERSONS. *Administration. Non-residents.*
   Under Code 1857, p. 438, art. 61, administration upon the estate of a non-resident may be granted in this State in a county where the greater part of his personal property is situated, although his domicile is in another county of this State.

2. SAME. *Situs of property. Choses in action.*
   If the personal property is a stock of goods and notes and accounts, administration is properly granted in the county where the stock is located and where the debtors reside, their residence fixing the location of the debts. *Speed* v. *Kelly, ante,* 47.

3. SAME. *Residence. Domicile.*
   A person who, in order to prevent the capture of his slaves by the Federal army in 1862, went with them to Texas, where he died in 1865, did not lose his domicile in this State, but became a non-resident within the intent of the administration statute.

4. SAME. *Administration sale. Ejectment. Charge for purchase-money.*
   Under Code 1880, § 2052, which is prospective in its operation, the defendant in an action of ejectment begun Sept. 10, 1877, and tried in April, 1881, could not assert a claim arising from the appropriation of the purchase-money of the land to debts of the intestate's estate, of which it was part.

5. SAME. *Statutory lien. Estoppel by judgment.*

Even if such defendant had possessed that right and did not avail himself of it in the ejectment suit, he could, nevertheless, invoke the interposition of a chancery court to enforce the statutory claim.

6. SAME. *Bill for reimbursement. Mala fide purchaser. Turpitude.*

Equity will enforce the claim for reimbursement of a *bona fide* purchaser at a void administration sale when he is compelled to defend by suit of the heirs, and will do the same for a *mala fide* purchaser on his own suit, but *quære*, if the administrator sells and purchases in a scheme to embezzle the estate, will equity relieve a volunteer under him.

7. SAME. *Purchasers in good and bad faith. Distinction in treatment.*

The *mala fide* complainant is not, however, like one *bona fide*, treated as equitable owner of the land, but he is strictly subrogated to the rights of the creditors whose debts his money paid, except that the bar of the Statute of Limitations, accruing after the sale, is not pleadable against such claims.

8. SAME. *Ejectment. Injunction. Receiver.*

If the money was applied to probated claims against the estate, and no legal notice of insolvency was given, such a purchaser is, like the general creditors who held those claims, entitled to neither an injunction nor a receiver when the heirs recover in ejectment.

9. SAME. *Rent. Coverture. Res adjudicata.*

If the complainant is the administrator's wife, and a volunteer under such purchaser who bought as her husband's agent, she must in asserting her husband's rights be charged with the rent, from the probate sale to his death, which was not claimed in ejectment because of her coverture.

10. SAME. *Administration accounts. Personalty.*

The burden of proof is upon her to account for the personal property of the intestate, and the heirs having had no legal notice of the insolvency proceedings, she must introduce as clear evidence as the administrator would have been required to produce to entitle him to a discharge.

APPEAL from the Chancery Court of Clay County.

Hon. F. A. CRITZ, Chancellor, did not preside in this case, but W. L. CLAYTON acted as Chancellor *pro hac vice*.

*Houston & Reynolds*, for the appellant.

1. The purchaser's right to charge the land with the sum paid is well settled independently of statute. *Ragland v. Green*, 14 S. & M. 194 ; *Cook v. Toumbs*, 36 Miss. 685 ; *Jayne v. Boisgerard*, 39 Miss. 796 ; *Short v. Porter*, 44 Miss. 533 ; *Wilie v. Brooks*, 45 Miss. 542 ; *Douglas v. Bennett*, 51 Miss. 680 ; *Handy v. Noonan*, 51 Miss. 166 ; *Cole v. Johnson*, 53

Miss. 94; *Gaines* v. *Kennedy,* 53 Miss. 103; *Hill* v. *Billingsly,* 53 Miss. 111; *Evans* v. *Robertson,* 54 Miss. 683; *McGee* v. *Wallis,* 57 Miss. 638; *Sivley* v. *Summers,* 57 Miss. 712; *Callicott* v. *Parks,* 58 Miss. 528. This right exists in favor of a fraudulent purchaser. *Butler* v. *O'Brien,* 5 Ala. 316; *In re Wilson,* 4 Penn. St. 430; *Lee* v. *Hunter,* 1 Paige, 519. An executor *de son tort* is entitled to reimbursement, and a purchaser from him stands in his shoes. *Hill* v. *Henderson,* 13 S. & M. 688. Courts of equity will reimburse fraudulent purchasers for disbursements made by them for the benefit of the actual owners of the property, when it effects substantial justice. *Kennedy* v. *Kennedy,* 2 Ala. 571; *Abney* v. *Kingsland,* 10 Ala. 355; *Bank of Mobile* v. *Harris,* 6 La. Ann. 811; *How* v. *Camp,* Walker (Mich.), 427; *Boyd* v. *Dunlap,* 1 Johns. Ch. 478; *McLaughlin* v. *Daniel,* 8 Dana, 182. A purchase by an administrator at his own sale is not void, though not in good faith. It is voidable at the election of the heirs, and if avoided by them they must refund whatever of benefit the purchase has been to the estate. If the administrator has paid debts or satisfied liens, or purchased the property to pay his own debts, the property will be charged therewith. *Summers* v. *Brady,* 56 Miss. 10; 2 Williams on Executors, 1005, note *b.* In *Sivley* v. *Summers,* 57 Miss. 712, this court remanded the case to enable the *mala fide* purchaser to fasten upon it his charge. The equity of a purchaser in good faith is independent. He may assert it in a suit where he is the actor. *Gaines* v. *Kennedy, ubi supra; Hill* v. *Billingsly, ubi supra.* Why cannot a *mala fide* purchaser assert the equity in the same way? If the heirs commence their action of ejectment to recover the property, the purchaser, without the Code of 1880, cannot make defence of his charge upon the property by paying debts against the estate, but must file a bill to enjoin.

2. The provision of Code 1880, § 2052, which authorizes this defence to be made in the action of ejectment, did not apply to this suit, which was at issue when the Code went into effect. The section by its terms applies to future sales, and by § 4 the provisions of the Code are inapplicable to pending suits. But this statute provides only that the defence may be made at law, and, therefore, the remedy remains in equity.

*Lorraine* v. *Long*, 6 Cal. 452; *Hough* v. *Waters*, 30 Cal. 309; *Dorsey* v. *Reese*, 14 B. Mon. 157; Freeman on Judgments, § 281. In fact, the defence was not made at law, and it was not one which would defeat the recovery. Under such circumstances judgment in the prior action operates as an estoppel only as to those matters in issue and points controverted, and not upon those which might have been presented and were not. *Comwell* v. *County of Sac*, 94 U. S. 351, 352; 6 Wait's Actions and Defences, 768; *Hubbard* v. *Flynt*, 58 Miss. 266. Judge Campbell, in the case last cited, says: " The matter of this bill was not adjudicated in the former suit. It was not presented by the pleadings, and, therefore, could not have been adjudicated. The mere fact that it might have been introduced into the suit if the complainant had chosen so to do, does not make such matter *res judicata.*" A plaintiff may by taking a nonsuit reserve his claim for another trial. If a defendant who has a counter claim and the election to present it as a defence, or to bring an original suit, is not permitted to withdraw his claim and to bring it forward in another suit, then the contest between himself and the plaintiff is an unequal one, and he would be refused a privilege of which a plaintiff can make important use. 1 Wharton Evid. §§ 789, 790.

*R. O. Reynolds*, on the same side, made an oral argument.

*Fred Beall*, for the appellees, argued orally and in writing.

1. The Probate Court of Lowndes County had no jurisdiction of the estate of Joel Evans, and there has consequently been no administration on this estate, no claims established against it, but the proceeding is totally void. The case is just as if Weaver had taken possession of the land and appropriated it without any judicial proceeding to the use of his wife, and credited the deceased debtor with so much upon the alleged debt. Land can be sold for the debts of its deceased owner in the mode prescribed by the statute, and in no other way. *Cason* v. *Cason*, 31 Miss. 578; *Root* v. *McFerrin*, 37 Miss. 17. Weaver was the real purchaser and he paid nothing. This administrator cannot, by means of his confederate, take the land at its supposed value. *Bright* v. *Boyd*, 1 Story, 478; *Green* v. *Biddle*, 8 Wheat. 1; *Pilling* v. *Armitage*, 12 Ves. 78, 85; *McGee* v. *Wallis*, 57 Miss. 638. If subrogated to anything,

it is to the rights of general creditors, who are not entitled to an injunction or a receiver and cannot maintain a bill like this.

2. No right existed in Mrs. Weaver when this bill was filed which she can thus successfully assert. She has not shown valid claims against the estate, or that money which she paid for the land was used in their discharge. And if she had, her right of subrogation would be barred, for the reason that the statute began to run when the money was applied to the payment of debts. *Stanwood* v. *Clampitt*, 23 Miss. 372 ; *Short* v. *Porter*, 44 Miss. 533 ; *Marshall* v. *Hudson*, 9 Yerger, 57 ; *Maxey* v. *Carter*, 10 Yerger, 521. And, further, the Chancery Court has no jurisdiction of these matters, which, under Code 1880, § 2052, should have been settled in the ejectment suit. That judgment is conclusive against the right to maintain this bill.

*R. Davis*, on the same side.

1. Neither Devan nor Mrs. Weaver paid any money for the land. To whose rights then shall she be substituted ? She has discharged no lien or claim against the estate of Joel Evans. Subrogation applies only where one pays a debt which is a charge upon specific property. An intestate's land is not liable for his debts until the personalty has been exhausted. As the decree is void, the estate has never been declared deficient in personal property. The pretended claim of Weaver against the estate on which the price bid for the land at the void sale was credited, is a fraudulent claim. But if this claim was valid, the charge would be upon the personalty, which must be proved to have been exhausted before the land can be sold. In order to create the charge attempted to be enforced in this bill, the money must be proved to have been actually and in good faith paid and applied to subsisting debts against the estate ; and no such proof has been made. *Short* v. *Porter*, 44 Miss. 533 ; *Sivley* v. *Summers*, 57 Miss. 712.

2. The probate proceeding was void, and even if it had been valid the decree of insolvency was void, and the sale was void for want of a bond. In the heirs the title to the land is vested. It is unaffected by these void proceedings. They are entitled to the possession of the land, and no court can deprive them of the fruits of their recovery in ejectment by injunction or the appointment of a receiver. If the appellant has paid a creditor

of the estate, she can be subrogated at most only to his rights, which are to exhaust the personalty in the legal mode and then proceed upon the probate side of the Chancery Court against the land. But a bill in chancery to deprive the heirs of the land, or to appoint a receiver in the first instance, cannot be maintained by a general creditor of the estate.

3. By the result in the action of ejectment the matters sought to be now litigated are *res adjudicata*. There the appellant pleaded the one year's statute of limitations, which put in issue the questions whether the purchase-money was paid in good faith and applied to valid debts, and the verdict settled these questions in the negative. *Packet Co.* v. *Sickles,* 5 Wall. 580; Wells on Res Adjudicata, §§ 3, 4. This bill cannot be maintained without deciding the same questions of fact contrary to the verdict of the jury. The subject-matter and the parties are identical in the two suits, and the questions for determination are precisely. the same. Under Acts of 1873, p. 41, as by the previous law, the payment in good faith and discharge of valid debts were essential to sustain a bill like this. *Cole* v. *Johnson,* 53 Miss. 94; *Gaines* v. *Kennedy,* 53 Miss. 103; *Hill* v. *Billingsly,* 53 Miss. 111. But under Code 1880, § 2052, which became operative before the ejectment trial, the precise thing here demanded was made a matter of defence and directed to be tried in the lawsuit.

4. No denial is seriously made that the appellant is a purchaser *mala fide.* This fact is settled by the ejectment suit, and is proved by evidence apart from the record of that proceeding. The equity of subrogation cannot be asserted by a *mala fide* purchaser by means of an independent bill in equity. A complainant can come into equity only with clean hands. The rule that he who seeks equity must do equitably applies against the complainant, and it cannot be used against defendants. No case can be found in any State or nation where a court of chancery has allowed the use of its powers to enforce contracts founded in fraud, or rights arising out of such contracts. Chancery Courts always require parties to appear before them with clean hands. And here parties come invoking this court to enforce a transaction which a court of law has denounced as infamous. In support of the case as presented

in this bill several cases are cited. *Gardner* v. *McManus*, 57 Miss. 647 ; *Gaines* v. *Kennedy*, 53 Miss. 103 ; *Hill* v. *Billingsly*, 53 Miss. 111 ; *Cole* v. *Johnson*, 53 Miss. 94, and *Short* v. *Porter*, 44 Miss. 533. Each of the above cases proceeds upon exactly the same ground. The sale and purchase and actual payment must be in " *good faith.*" It is the belief of the purchaser that he is getting a good title, and the actual application of the money to the benefit of the owner in removing a charge on his estate, which constitutes the equity.

*Houston · & Reynolds*, for the appellant, in reply.

It was not adjudicated in the ejectment suit that the purchase-money was never paid or applied to debts of the estate. But if no money was paid, the administrator or his vendee would have the right to charge the land with the sum credited on his claim. If debts of the estate were paid, it matters not by whom or in what manner, the owner of the property used in payment can maintain the bill. Debts are a charge on a deceased debtor's land. *McGee* v. *Wallis*, 57 Miss. 638. In this case it is shown by evidence independently of the administration record that the personal property was inadequate. Even if the Probate Court of Lowndes County had no jurisdiction to grant letters of administration, that would not affect this bill; but, as Joel Evans had property in this county, the administration, under the Code of 1857, was properly there. General creditors of an estate can proceed against the land, and where a purchaser is to be subrogated to their rights the proceeding must take the form of a bill of this character. Valid debts of the estate were discharged, and the appellant has a right to reimbursement. Against the assertion of this right the Statute of Limitations did not begin to run until she was evicted. *McLaughlin* v. *Daniel*, 8 Dana, 182 ; *Gaines* v. *Kennedy*, 53 Miss. 103 ; *Hill* v. *Billingsly*, 53 Miss. 111. None of the claims paid by the sale were barred at the time it was made, and in this the case differs from *Vaughn* v. *Hudson*, *ante*, 421. A surety's right to subrogation begins from the time when he is compelled to pay the debt of his principal, but the right of a purchaser at a void sale to charge the land with the purchase-money accrues not when he pays for the land, but when he is deprived of its possession.

COOPER, J., delivered the opinion of the court.

The appellant filed her bill in the Chancery Court of Clay County, against the appellees, heirs-at-law of Joel Evans, deceased, in which she charges, that Joel Evans " moved to Texas from the State of Mississippi in November, 1862, having been for many years prior to his removal a resident citizen of the State of Mississippi, and just prior to said removal a resi- dent of West Point, Lowndes County ; that he died in Texas, intestate, on the 5th of October, 1865, leaving surviving as his sole surviving heirs his three daughters," the defendants to the bill.    That W. B. Weaver, who was the husband of the com- plainant, was, on the 13th day of June, 1866, appointed admin- istrator of the estate of said Evans by the Probate Court of Lowndes County.    That at the time of his death, the said Evans was the owner of a small personal estate in Lowndes County, and also a small body of land, situated there, and was also the owner of the land described in the bill situated then in the county of Chickasaw, but now in the county of Clay. That in August, 1866, Weaver petitioned the Probate Court for an order declaring the estate of Evans insolvent, and for an order to sell the real estate for the payment of debts ; that publication was made for the heirs-at-law, guardians *ad litem* appointed for the infants, and on the first day of October an order was made declaring the estate insolvent, and directing the administrator to sell the lands for cash for the payment of the debts of the estate.    That Weaver gave the notice re- quired by law, and on November 17, 1866, sold all the lands of said estate for cash *for gold*, and at such sale one Devan became the purchaser of the lands described in the bill at the price of six thousand two hundred and ten dollars in gold, which he paid to the administrator, who converted the gold into currency at forty per cent premium, and appropriated the same to the payment of valid subsisting probated claims against the intestate.    That the sale was duly reported to and confirmed by the Probate Court, and a deed executed to the purchaser.    That in 1870 Devan sold and conveyed the land bought by him to the complainant at and for the sum of ten thousand dollars.    That on the 10th day of September, 1877, the defendants instituted their action of ejectment against

her in the Circuit Court of Clay County for the recovery of the
lands, and also for the sum of eleven thousand dollars for the
use and occupation thereof from the first day of November, 1866,
to the institution of said action.   That the complainant ap-
peared and pleaded to said action, and interposed her claim for
improvements put on the land, but did not in said action make
any claim for reimbursement of the purchase-money paid by
Devan for the lands, which money was appropriated by Weaver,
the administrator, to the payment of the debts due by Evans.
That a trial of said ejectment suit was had at the April Term,
1881, of said Circuit Court, which resulted in a verdict and
judgment in favor of the plaintiffs therein for the land sued for,
but that the rents claimed in said action were discharged by
appropriating to the payment thereof the improvements claimed
by the defendant therein.   That the jury found the sum of
seven hundred and fifty dollars a reasonable rental for said
lands for the year 1881, and as the complainant had at the
time of said judgment a crop growing on the premises, she
elected to execute a bond for the rent for that year, and to
retain possession ; which she did.   The bill then charges that
the purchase-money paid by Devan and appropriated to the
payment of the debts of Evans, with interest thereon at six per
cent per annum from the time of such appropriation, will exceed
both the present value of the lands, and the rent due by the
complainant for the year 1881.   She claims that she is entitled
to subject said lands and the rents thereof to the repayment of
this sum, and prays that a receiver may be appointed to take
charge of the lands and collect the rents, both what is now due
by her, and what may accrue until a final settlement of the
matters in this suit.   An injunction was asked restraining the
defendants from proceeding against the complainant to collect
the rent for the year 1881, or from suing out a writ of *habere
facias possessionem* under the judgment in ejectment.   The
injunction was granted as prayed.

   The answer of the appellees admits the death of Evans in the
State of Texas, but charges that he was not a resident of that
State, but was only temporarily there on business, having gone
there with his slaves to prevent them from falling into the
hands of the Federal army.   They deny that he ever was a

citizen or resident in Lowndes County, but charge that for many years before going to the State of Texas he had resided in the county of Chickasaw on the lands described in the bill, on which he had a mansion house; but they say that he was for some years engaged in business as a merchant in the town of West Point; but that early in 1861 he sold out said business, and after that time was never engaged in any kind of business there, and that the books of account, notes, &c., pertaining to said business had before his visit to Texas been carried to some point in Alabama, and had never been returned to the State of Mississippi before the grant of administration to Weaver. They therefore deny that the Probate Court of Lowndes County had any jurisdiction to grant letters of administration on his estate, and charge that all proceedings therein were *coram non judice* and void. They say that the sale was void, because the chancery court had no jurisdiction over the administration of the estate, and because the administrator gave no bond to account for the proceeds, and because no notice was given to the heirs of the petition for a declaration of insolvency, and further that it was not made in good faith by the administrator, nor was the purchase in good faith by Devan, who they charge was the agent of the administrator, and bought the land for him, taking title in his own name in order to give a semblance of validity to the purchase. They deny that Devan paid any part of the purchase-money, or that the complainant paid anything to Devan in consideration of his conveyance to her. They charge that the administrator had presented as a claim against the estate a simulated and fictitious claim, and that the purchase was really made by him through Devan, and the purchase-money paid by crediting the amount bid by Devan on this pretended debt due to himself; that the administrator received a large amount of personal property, sufficient if properly accounted for to have discharged all the valid debts against the estate; that the administrator had made no account with the Probate Court, showing the amount received by him from the personal estate, nor had he ever presented an inventory of the personalty as required by law. They deny that in the action of ejectment they demanded rents against the complainant from November, 1866, but state

that the action being against both the complainant and her husband, W. B. Weaver, they, in the institution of said suit, propounded a claim for rents against him from the said date, but were advised that as against the complainant they could not in the action at law recover any rents for the time anterior to the death of her husband, because of her coverture, but that after the death of her husband (which occurred pending that suit), they demanded and recovered rents for the occupancy of the property for the time subsequent to his death; that rents for this time were allowed by the jury, and paid by the improvements claimed in said suit, but that there was in said action no adjudication of their right to rents for any period of time anterior to the death of said Weaver, and they insist that if any relief shall be granted to the complainant she shall be charged with the reasonable value of the rents of the land from the day of the sale to Devan to the day of the death of her husband.  They say that by the action of ejectment it was determined that the sale by the administrator was not made in good faith and no purchase-money was paid, and that this is conclusive against complainant's right to subject the land to the repayment of the purchase-money claimed by her to have been paid by Devan.  They also insist that, by failing to demand in the action of ejectment repayment of this purchase-money, she has waived all right to charge it on the land.  They also deny that the land is not of sufficient value to be worth the amount of the purchase-money which the complainant attempts to charge upon it, and say that in no event can she charge the rents of the land with these debts paid by the application of the purchase-money, because the creditors to whom the debts were due could have had no such power, and that at most the complainant can only charge that property which these creditors could have charged.

The defendants to the bill made a motion to dissolve the injunction on bill and answer, and on proof, which consisted of the evidence introduced on the trial of the action of ejectment.  The injunction was dissolved, and the appellant prosecutes this appeal from the order.

Aside from the bill and answer, we think these facts are shown by the evidence to be true; that the sale made by the

administrator was void, because no legal notice was given to the heirs of the proceedings in insolvency, and because no bond was given before the sale by the administrator to account for the proceeds of the sale.    We think it is also shown that the sale to Devan was not a real sale, nor he a *bona fide* purchaser, but that he bought at the instance of and as the agent of the administrator, and that the sale ought to be treated just as if the purchase had been made by Weaver himself in his own name. There are other matters pressed upon our consideration by counsel for both parties, but as the cause must proceed farther in the court below, where other testimony may be introduced, we have preferred not to express any opinion as to questions of fact presented by the record in its present condition, except so far as it has been necessary so to do in applying the principles of law which control the decision of the question presented for adjudication.    We consequently express no opinion as to whether the sale made by Weaver was but a part of a fraudulent scheme concocted by him to get possession of the lands of the intestate, or whether, if such was its character, the appellant would be debarred of all remedy against the estate, as the equitable holder of the claims paid by the proceeds of the sale, nor do we consider the sufficiency of the testimony introduced to prove the validity and amount of the claims propounded against the estate in favor of Weaver & Stark and Eckford & Weaver.    Leaving these matters out of view, the objections of the appellees to the relief prayed by the complainant are based on the propositions, first, that the Probate Court of Lowndes County had no jurisdiction over the administration and therefore all the debts against the estate are barred by limitation ; second, that as the purchase under the sale was really made for the administrator, and as by law he could not buy, he was not a purchaser in good faith, and therefore neither he nor the complainant, whose claim rests upon the validity of his, can come into equity for relief, and that it was settled by the judgment in the ejectment suit that the purchase was not made in good faith ; and, third, that, as the complainant failed to set up her claim in the action of ejectment, she cannot now assert it.

Code 1857, p. 438, art. 61, under which the administration was granted is, " The granting of letters of administration of

the estate of any intestate, and the hearing and determining the right to administration, shall appertain to the Probate Court of the county in which the intestate had, at the time of his death, a mansion-house or known place of residence, but if the intestate had no mansion-house or known place of residence, then to the Probate Court of the county where the intestate died, or that in which his personal property or the greater part of it may be." Under the facts shown either by the bill or the answer, we think the grant of administration by the Probate Court of Lowndes County was proper. The statute refers to the residence, not the domicile of the intestate, as fixing the jurisdiction to grant administration. One may be resident in another State, and yet his domicile may be in this, in which case administration may be granted in " the county where the intestate died, or that in which his personal property or the greater part of it may be." If the assets of the intestate referred to in the petition for letters of administration consisted of a stock of goods situated in the county of Lowndes, then the administration was properly granted there, and, if they consisted of accounts or notes due by persons resident there, their location was fixed by the residence of the debtors, for the purposes of administration. *Speed* v. *Kelly, ante,* 47. Though the intestate's domicile was not lost by his absence in the State of Texas under the circumstances stated in the answer, his residence was for the time abandoned, and he would have been liable to attachment as a non-resident at the suit of creditors. *McKiernan* v. *Massingill,* 6 S. & M. 375 ; *Alston* v. *Newcomer,* 42 Miss. 186 ; *Morgan* v. *Nunes,* 54 Miss. 308.

The complainant could not in the action of ejectment set up her claim arising from the appropriation of the purchase-money, to the debts of the intestate under § 2052 of the Code ; this section is applicable only to cases in which the sale has been made since the adoption of the Code ; it is only where the property of a decedent " shall " be sold that the remedy is given ; but if she could have done so her failure would not have affected her right to invoke the interposition of a chancery court, for such lien " may be enforced in chancery, or may be availed of in defence of any action for such land, in the

same manner in which a claim for valuable improvements may be allowed in ejectment.'' It is well settled in this State, aside from the provisions of the statute that a court of equity will, in favor of a *bona fide* purchaser who failed to acquire the title which he believed he was getting, charge the land in the hands of the owner with the amount of the purchase-money appropriated to the discharge of an incumbrance on it. This has been adjudicated in an unbroken line of decisions beginning with *Ragland* v. *Green,* 14 S. & M. 194, and ending with *McGee* v. *Wallis,* 57 Miss. 638. This right is not controverted by the appellees; but it is said that this is the first case in which it has been attempted to invoke this equity at the suit of a *mala fide* purchaser who has not been called into equity by the heir, but asserts the right in an independent action instituted by himself. Originally this relief was granted in equity only to *bona fide* purchasers whom the holder of the legal title had called to an account in that court, and was not extended beyond allowing him to set up, as against the holder of the legal title, meliorations to the estate to an extent equal to the rents demanded. In *Bright* v. *Boyd,* 1 Story, 478, Judge Story first introduced the equitable rule that a purchaser might himself invoke the interposition of a court of equity as a protection against the assertion of the legal title, until payment should be made for improvements placed by him on the land, and although he states in his work on Equity Jurisprudence that this principle has not generally been recognized and enforced by courts of equity, it is, as was said by Judge George in delivering the opinion of this court in *McGee* v. *Wallis, ubi supra,* firmly established in this State. The right to charge the land purchased with repayment of the purchase-money, which has been appropriated to the payment of a charge previously existing upon it, is of the same character as that to charge it with the value of improvements, but is of a more persuasive equity, since the *status quo* is precisely restored, and no charge is put upon the property which before did not exist. In cases where the *bona fide* purchaser has been permitted to charge the land with the purchase-money paid by him, courts of equity, while proceeding on the theory of substituting him to the right of the creditor whose debt has been paid, in fact give a broader right

to the purchaser than was held by the creditor. They have, while professing to grant a charge only on the land, really treated the purchaser as the equitable owner, and protected his possession as such against the holder of the legal title by enjoining any interference with the possession until payment is made of the equitable charge.  *Howard* v. *North*, 5 Texas, 290; *Vallé* v. *Fleming*, 29 Mo. 152; *Dufour* v. *Camfranc*, 11 Mart. 607; *McGee* v. *Wallis*, 57 Miss. 638.  In *Grant* v. *Lloyd*, 12 S. & M. 191, where a sale of real estate was set aside on the application of the heirs, it was held that the fraudulent purchaser was entitled to a decree charging the land with the amount of his bid, which went to the payment of the debts of the intestate.  In *Sivley* v. *Summers*, 57 Miss., 712, which was the case of a purchase by an administrator at his own sale, it was said that as the sale was avoided the *status quo* ought to be restored as far as it was practicable, and the administrator was permitted to charge the lands with his debt, which had been paid by the sale and purchase by him.  In *Smith* v. *Drake*, 23 N. J. Eq. 302, the administrator was under like circumstances permitted to charge the land both with the amount of his bid, which was used in the payment of debts due by the estate, and with the value of improvements put on the property.  In all these cases, however, the proceedings had been instituted by the heirs, and the court, it is said by counsel for the appellees, granted the defendants relief upon the rule that the heirs seeking relief were required to do equity before relief would be granted.  It is true that in these cases the relief was given to parties defendant, but at least they are authority for the position that the defendants were equitably entitled to the charge on the lands, otherwise it would not have been given even though they were defendants; for we do not understand that courts of equity, as a condition to granting relief to a complainant, ever required him to pay to the defendant anything to which he was not equitably entitled.  But the rule established in *Bright* v. *Boyd*, *ubi supra*, was precisely this and nothing more, that where a party, if called in equity, might have asserted a claim to reimbursement, then he may himself go into equity for the purpose of asserting this demand; and this rule, as has before been stated, has been incorporated into the equity

jurisprudence of this State. We are therefore of the opinion that the complainant may seek the assistance of a chancery court to obtain that relief which it would have granted if she had been proceeded against by the heirs-at-law of Joel Evans for an account.

In cases of this character, however, we are not prepared to extend to one not a *bona fide* purchaser the full relief granted to persons occupying that relation to the land. Substitution to the rights of the creditors whose debts have been paid by the application of the purchase-money, is the full extent to which the relief should extend, with this qualification, of course, that if the debts were not barred by limitation at the time of the sale, they may yet be enforced as they might then have been. In short the rights of the parties are to be considered now as they would be if the sale had never been made. As the creditors whose debts were paid by the purchase-money could not have caused the lands to be placed in the hands of a receiver to collect the rents, and as the complainant takes, through her husband the administrator, exactly the rights of these creditors and no more, she was not entitled to the writ of injunction which was properly dissolved. If the allegation of the defendants' answer, that no rents were claimed in the action of ejectment against the complainant anterior to the death of her husband, shall be supported by proof, she must be charged in the account with the reasonable value of such rents from the date of the sale to Devan to the date of the death of her husband. The burden of proving the character, amount and disposition of the personal estate, devolves upon the complainant, who must introduce as clear evidence as the administrator would have been required to introduce to entitle him to a discharge touching the personal estate. If the accounts have been properly rendered and passed, the burden will be light; if, through his default in accounting with the Probate Court, this shall be difficult for her to do, it is a misfortune of her circumstances, but more proper to be encountered by her than by those who are in no default, and to whom the administrator, whose rights are asserted by the complainant, was by law required to account.                    *Decree affirmed.*